Jesus **BUENO**; Jose **Castro**; Juana **Castro**; Evangelina **Castro**; Neives **Castro**; and Lucila **Castro**, minors, by and through their next friend and parents, Jose and Juana **Castro**; et al., Plaintiffs-Appellees,

v.

Richard & Darlene **MATTNER**, d/b/a Mattner Farms, Defendants-Appellants.

No. 86–1403.

United States Court of Appeals, Sixth Circuit.

Argued July 27, 1987.

Decided Sept. 30, 1987.

Richard M. Van Orden (argued), Grand Rapids, Mich., for defendants-appellants.

John P. Worcester, Advocates for Basic Legal Equality, Inc., Toledo, Ohio, for amici curiae.

Richard Kessler (argued), Michigan Migrant Legal, Assistance Project, Grand Rapids, Mich., for plaintiffs-appellees.

Before KENNEDY and NELSON, Circuit Judges, and WEBER,* District Judge.

CORNELIA G. KENNEDY, Circuit Judge.

Defendants-appellants Richard and Darlene Mattner, d/b/a Mattner Farms ("defendants") appeal the decision of the Dis-

* The Honorable Herman Jacob Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

trict Court, 633 F.Supp. 1446, finding defendants in violation of both the Migrant and Seasonal Agricultural Worker Protection Act ("the Act" or "the MSAWPA") and the Fair Labor Standards Act ("the FLSA"). The District Court for the Western District of Michigan found that defendants' failure to provide written disclosures constituted an intentional violation of the MSAWPA, 29 U.S.C. §§ 1821(a)(1)–(5), 1821(c), and 1821(d)(2), and that defendants had failed to pay minimum wages to members of the group of plaintiffs-appellees ("plaintiffs"). Defendants claim on appeal that: 1) a mere recommendation by a former employee does not constitute recruitment for purposes of the "family business" exemption under 29 U.S.C. § 1803(a)(1); 2) they were unaware of the existence of the Act and their lack of knowledge precludes an intentional violation of the Act; and 3) they had not failed to pay minimum wages during the 1983 strawberry harvest. For the reasons stated below, we affirm the District Court's decision that defendants do not qualify for the "family business" exemption, that they are liable under the MSAWPA despite their lack of knowledge, and that they did violate the FLSA.

Defendants are Richard and Darlene Mattner, who own and operate a family farming operation in southwestern Michigan under the name of Mattner Farms. Mattner Farms is a multi-crop farming operation that has harvested strawberries for many years. Plaintiffs are a group of thirty-seven migrant farm workers, including both adults and children. In 1983, plaintiffs were among the approximately one hundred migrant workers employed by Mattner Farms to harvest strawberries. They were paid on a piece-rate basis. After the harvest, plaintiffs sued defendants under the MSAWPA and the FLSA, claiming that defendants had failed to make written disclosures pursuant to the MSAWPA and failed to pay minimum wages pursuant to the FLSA.

The MSAWPA repealed the Farm Labor Contractor Registration Act of 1963, 7 U.S.C. § 2041, et seq. ("the FLCRA"). See 29 C.F.R. § 500.3(b). The MSAWPA was adopted January 14, 1983, and became effective April 14, 1983. Interim regulations promulgated by the Department of Labor were published on April 12, 1983, and final rules and regulations were published on August 12, 1983. The substantive content of the earlier act was incorporated into the MSAWPA, but the new Act went beyond the old by imposing many of the notice and disclosure duties that had been required only of farm labor contractors [1] on the agricultural employer. Under the MSAWPA, the agricultural employer is obligated to: 1) disclose in writing at the time of recruitment for employment the terms of employment; 2) post in a conspicuous place a poster to be provided by the Secretary of Labor; 3) post and present to each employee a statement of the terms and conditions of provided housing; 4) keep wage records reflecting hours worked and wages paid; and 5) provide each employee with an itemized written statement of the wage record information at each pay period. See 29 U.S.C. §§ 1821(a)(1)–(5), 1821(b), 1821(c), 1821(d)(1), and 1821(d)(2). A person aggrieved by an intentional violation of the Act is granted a private cause of action and may recover actual or statutory damages. See id. at § 1854(c)(1).

As did the FLCRA, the MSAWPA provides an exemption from its coverage for family businesses. Under the Act, the following is not subject to the provisions requiring disclosures by agricultural employers:

Any individual who engages in a farm labor contracting activity on behalf of a farm, processing establishment, seed conditioning establishment, cannery, gin, packing shed, or nursery, which is owned or operated exclusively by such individu-

---

1. The FLCRA provided that a farm labor contractor was "any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports ... migrant workers (excluding members of his immediate family) ... for interstate agricultural employment." 7 U.S.C. § 2042(b). The term did not include "any farmer, processor, canner, ginner, packing shed operator, or nurseryman who engages in any such activity for the purpose of supplying migrant workers solely for his own operation...." 7 U.S.C. § 2042(b)(2).

al or an immediate family member of such individual, *if such activities are performed only for such operation and exclusively by such individual or an immediate family member,* but without regard to whether such individual has incorporated or otherwise organized for business purposes.

29 U.S.C. § 1803(a)(1) (emphasis added). The regulations specify who will be considered an immediate family member. 29 C.F.R. § 500.20(*o*). The "immediate family" is limited to spouses, children, stepchildren, foster children, parents, step-parents, foster parents, and siblings.

Plaintiffs asserted at trial that Mattner Farms failed to provide the necessary written disclosures and that defendants' failure constituted an intentional violation of the Act. Defendants admitted that they had not made many of the disclosures required of them, but claimed that their failure was the result of a lack of knowledge of the existence of the Act and its requirements. They also argued that they fell under the family business exemption of section 1803(a)(1). Plaintiffs additionally ·claimed that defendants violated the FLSA during the three weeks of strawberry harvest by failing to maintain records of the hours worked and by failing to pay minimum wage. In response to this second complaint, defendants asserted that the piecerate pay was sufficient to satisfy the minimum wage requirements and that their records were in compliance with the FLSA. Plaintiffs finally asserted a claim for retaliatory discharge, alleging that at least one migrant worker was discharged for complaints made about the wage rate. Plaintiffs sought monetary damages, injunctive relief, and reasonable attorney's fees with respect to their minimum wage claims.

Regarding plaintiffs' claims under the MSAWPA, the District Court for the Western District of Michigan found that persons other than the Mattners or their immediate family had performed farm labor contracting activities on behalf of Mattner farms

and that defendants therefore fell outside of the family business exemption. The court found that a Mr. Benavides had recruited workers with defendants' knowledge and acquiescence. The court also rejected defendants' claim that they had not intentionally violated the Act. It held that "as a matter of law, defendants' alleged lack of actual knowledge of the Act's applicability and requirements does not preclude the Court from finding that an intentional violation occurred." Joint Appendix at 114. The court held alternatively, that "the evidence showed that defendants were, or should have been, aware of the Act's existence and possible application to them before the start of the 1983 strawberry harvest." *Id.* at 115. Finally, the District Court found that defendants had failed to maintain adequate records, and, in the case of several of the plaintiffs, had failed to pay minimum wages. Defendants appeal this decision.[2]

### APPLICABILITY OF THE MSAWPA TO DEFENDANTS

■ Defendants first claim that they fall within the family business exemption provided by 29 U.S.C. § 1803(a)(1). They assert that since the 1960s they have not authorized, directed, or hired any person to recruit, solicit, or employ migrant workers to work at Mattner Farms. Instead, they hire their workers from those who drive onto their farm looking for work. The District Court made a factual finding, however, that defendants had "implicitly or explicitly authorized Mr. Benavides to bring workers with him to their farm and that Mr. Benavides was at least partially in charge of his 'crew.'" Joint Appendix at 106. It concluded that defendants did not qualify for the exemption because non-family members performed farm labor contracting activities for the farm. Defendants must demonstrate that the court's findings were clearly erroneous. *See* Fed. R.Civ.P. 52.

---

**2.** The District Court also found that no basis existed to support a claim of retaliatory dis-

charge. Plaintiffs do not appeal this holding.

Several of the plaintiffs had apparently been previously employed by the Mattners. They obtained their employment for the harvest of 1983 by telephone call to the Mattners. Others of the group simply arrived at the farm seeking employment, having heard about the farm from friends. Plaintiffs claim that several of their number were recruited by Mr. Benavides to work at the farm. Mr. Benavides was employed as a field boss by the Mattners for the 1983 season. He apparently contacted Richard Mattner seeking employment as a crew leader, whereupon Mr. Mattner informed him that they did not use crew leaders. The Mattners were losing a field boss, however, and told Mr. Benavides that there might be work as a field foreman, coordinating the camp and assisting in the fields. Defendants claim that they advised him to check back with them in the spring and that they had no further contact with him. In his testimony and his desposition, Mr. Benavides stated that he had had several telephone conversations with defendants over the course of the spring and that defendants had authorized him to bring enough workers to fill seven houses. In addition, several plaintiffs testified that Mr. Benavides had brought workers with him from Florida and had performed other farm labor contracting activities. Rafael Moreno testified that Mr. Benavides had brought him to the Mattners and Jose Castro stated that Mr. Benavides had brought other families as well. The Cordovas stated that they had driven onto the farm seeking employment, but that Mr. Mattner informed them that he was not hiring. They claimed that as they were leaving, Mr. Benavides gave them work and provided them with housing. Mr. Benavides' testimony was consistent with that of the Cordovas.

The District Court's finding that Mr. Benavides had performed farm labor contracting activities on behalf of defendants is not clearly erroneous. The court expressly noted the evidence upon which it relied in reaching its conclusions. It accepted the testimony of Mr. Benavides and the other evidence suggesting that he was authorized to recruit workers, and rejected defendants' testimony that they were disassociated from Mr. Benavides' activities. The court found that:

> [d]efendants cannot claim the benefit of the family business exemption, and thus escape liability under the Act, by arguing that they never explicitly authorized others to perform farm labor contracting activities on their behalf when they accepted the benefit of migrant labor brought to their farm through the efforts of other workers. Defendants' acceptance of some workers with the knowledge that they were there because of Mr. Benavides' efforts precludes them from claiming the benefit of this exemption.

*Id.* at 107–08. The United States Supreme Court recently reiterated that "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985). The Court further stated that "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574, 105 S.Ct. at 1512. The District Court's finding that there was in fact recruitment by someone other than a family member is plausible in light of the record viewed as a whole and thus not clearly erroneous.[3] Defendants are therefore not exempted from the disclosure requirements of the MSAWPA as a "family business."

## THE "INTENTIONAL VIOLATION" STANDARD

■ The MSAWPA was adopted in January of 1983 and became effective on April

---

**3.** We note that the District Court also found that "defendants would hire new workers who would arrive with repeat help," Joint Appendix at 108, and that at least one worker had learned about the farm through a former employee.

We disagree with the court's holding that these gratuitous recommendations were also farm labor contracting activities performed on defendants' behalf.

14 of the same year. Defendants admit that they failed to comply with several of the disclosure provisions. They claim, however, that they were unaware of the existence of the Act and that their lack of knowledge precluded a finding by the court that they had committed an intentional violation. Defendants assert that the first time they learned of the Act was when they received a letter from plaintiffs' attorney. They were generally aware of the existence of the earlier FLCRA, but were not familiar with the substance of the statute because they did not employ farm labor contractors.

The District Court found that defendants "were, or should have been, aware of the Act's existence and possible application to them before the start of the 1983 strawberry harvest." Joint Appendix at 115. We hold that this finding is clearly erroneous. The Act did not become effective until April of 1983, one month before the Mattners began hiring for the 1983 strawberry harvest. Final regulations were not published until August, although interim regulations were published in April. A representative of the Berrien County office of the Michigan Employment Security Commission, Mr. Pavlides, testified that he requested copies of the new Act from the Department of Labor in the summer of 1983. He was informed that copies of the Act were not then available. By September of 1983, the department had received only Spanish editions of the law. Mr. Pavlides also stated that he had received no inquiries from area farmers during the summer of 1983 and that he believed that they were unaware of the Act. There were very few public comments on the Act. In May of 1983, a monthly Farm Bureau publication carried a comment regarding the new Act. Aside from discussing the development of the Act and its regulations, the publication noted that "[the Act] clarifies many of the ambiguous terms that were used in FLCRA and does not require farm employees to register as labor contrac-

tors." Joint Appendix at 154–55. It further noted that the Act "completely exempts family farms and small businesses from any of the provisions in the Act." *Id.* at 155. In January, April, and August of 1983, radio releases discussing the Act were broadcast. The August release stated in relevant part that "[t]he Act ... requires agricultural employers to disclose certain job information before a migrant or seasonal agricultural worker is hired. The Act repealed, however, the requirements for farmers to register with the U.S. Department of Labor as ['crew leaders']." Joint Appendix at 161–62.

Defendants claimed that they did not read or hear any of the above comments on the MSAWPA. There was no evidence presented to rebut this assertion or to indicate that defendants were aware of the Act and its applicability to them. The District Court simply found that "[a]lthough not widely disseminated, information from which defendants did or could have learned of the Act's existence and application to them was available and in circulation during the spring of 1983." Joint Appendix at 115. It thus concluded that defendants were or should have been aware of the Act. We find that, given the timing of the Act and the scarcity of information regarding the Act, this finding is clearly erroneous.

■ The District Court held alternatively that "as a matter of law, defendants' alleged lack of actual knowledge of the Act's applicability and requirements does not preclude the Court from finding that an intentional violation occurred." Joint Appendix at 114. We agree. As plaintiffs assert, this holding is in accordance with the cases addressing the identical "intentional violation" standard under the FLCRA.[4] The Courts of Appeals for the Seventh and the Ninth Circuits have held that "the term 'intentional' in Section 2050a(b) means conscious or deliberate and does not require a specific intent to violate the law." *Alvarez v. Joan of Arc, Inc.,*

---

**4.** The "intentional violation" standard under the MSAWPA has not yet been addressed by an appellate court. However, the legislative history of the Act indicates that the standard is

identical to that in the analogous FLCRA provision, section 2050a(b). *See* 1982 U.S. Code Cong. & Admin. News 4567.

658 F.2d 1217, 1224 (7th Cir.1981); *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 238 (7th Cir.1983); *Alvarez v. Longboy*, 697 F.2d 1333, 1338 (9th Cir.1983) (noting agreement with the interpretation of the Seventh Circuit). The Court of Appeals for the Eleventh Circuit has interpreted the term "intentional" to refer to "the standard by which a person may be held liable for the natural consequences of his or her acts." *Rivera v. Adams Packing Ass'n*, 707 F.2d 1278, 1283 (11th Cir.1983). Finally, the Court of Appeals for the Fifth Circuit has adopted both of the above definitions. *See Castillo v. Givens*, 704 F.2d 181, 197–98 (5th Cir.), *cert. denied*, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983).

Defendants respond that, although courts have held that there is no requirement of specific intent to violate the law, there must at least be some awareness that the law exists. They claim that a total lack of awareness must preclude a finding of an intentional violation and they note that in most of the cases addressing the standard the defendants were at least aware of the requirements of the statute. *See, e.g., Castillo*, 704 F.2d 181; *Rivera*, 707 F.2d 1278. Defendants stress that the statute does require an *intentional* violation and that finding an intentional violation in a case such as this one would effectively eliminate the term "intentional" from the provision. We reject defendants' claim and find in accordance with the Court of Appeals for the Fifth Circuit which has rejected the claim that a defendant may not be held liable where the defendant was unaware of the existence or applicability of the statute. In *Salazar-Calderon v. Presidio Valley Farmers Ass'n*, 765 F.2d 1334 (5th Cir. 1985), *cert. denied*, 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986), the defendants argued that they had no knowledge of the existence of the FLCRA. The court stated in dicta that that argument was meritless, emphasizing that "[t]he focus under the standard we adopted [in *Castillo* ] is on the deliberateness of the conduct involved, not

the defendant's knowledge of the Act." *Id.* at 1345 n. 5.[5] It reasoned that the intentional requirement must be construed "so as to further the Act's *remedial* purposes." 765 F.2d at 1345. *See also De La Fuente*, 713 F.2d at 238 (stating that the defendant "failed to disclose adequately its intention to obtain compensation from interim employers for housing the Farmworkers, and there are no facts in the record to indicate that this failure was not conscious or deliberate (even if [the defendant was] unaware it was violating the law)"). Even assuming that they had no knowledge of the MSAWPA and its applicability to them, defendants in the case before us "do not argue that they negligently or carelessly failed to take the steps required to comply with these provisions of the Act." Joint Appendix at 115. We affirm the District Court's conclusion that defendants thus intentionally violated the Act's provisions.

## THE FLSA VIOLATION

The Fair Labor Standards Act required that defendants pay plaintiffs a minimum of $3.35 per hour. *See* 29 U.S.C. § 206. Defendants were obligated to pay the workers at least the equivalent of the minimum wage, even though in the form of a piece-rate wage as opposed to an hourly wage. In addition, the Act obligated defendants to prepare and maintain individual records documenting the hours that each worker worked. *See* 29 C.F.R. §§ 516.-2(a)(7), 516.6(a)(1). The Mattners apparently daily noted the time that the first worker entered the field and the time that the last worker left. In addition, the workers themselves were to fill out worksheets noting the number of flats picked and the hours worked. Defendants claim that the District Court erred in finding that they had failed to maintain adequate records and to pay the statutorily mandated minimum wage. We reject defendants' claim.

**5.** The court went on to find that the defendant was in fact aware of the statute. 765 F.2d at

1345 n. 5.

Plaintiffs were obligated to prove their entitlement to relief by a preponderance of the evidence. Because the defendant is usually in the best position to know the facts in a FLSA case, the Supreme Court has established guidelines for shifting the burden of going forward with the evidence to the employer. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–88, 66 S.Ct. 1187, 1191–92, 90 L.Ed. 1515 (1946). The court must first determine whether the defendants kept adequate records. If the defendants failed to do so, the plaintiffs must establish that they performed work for which they were not compensated and the amount and extent of such work. Finally, the defendants must produce other evidence establishing the precise amount of work performed or rebutting the inferences to be drawn from the plaintiffs' evidence.

Regarding the adequacy of defendants' recordkeeping, we see no prohibition in the FLSA against maintaining records of hours worked on a "first in, last out" basis and transferring those hours to individual records. The worker can only benefit under this system. In the case before this Court, however, defendants failed to maintain any individual records and the number of hours actually credited to each plaintiff was based on defendants' observations, transferred onto worksheets, of when each plaintiff was out of the field. The District Court correctly held that defendants had not maintained adequate records in accordance with the FLSA. The court further held that the plaintiffs who had testified had established generally the hours both they and other plaintiffs had worked. Noting that a plaintiff's testimony can be sufficient to satisfy its burden of proof, the court determined the extent to which plaintiffs had been underpaid on the basis of the testimony and the worksheets presented at trial. The court concluded that "most of the plaintiffs performed work during the 1983 strawberry harvest for which they were not properly compensated," Joint Appendix at 92, and found that defendants had failed to produce other evidence rebutting this conclusion or indicating the exact hours worked. The court addressed the individual claims and awarded the amounts to which it found plaintiffs entitled. These findings are not clearly erroneous. We therefore affirm the court's awards under the FLSA.

## CONCLUSION

We hold that the District Court's finding that defendants do not qualify for the "family business" exemption under 29 U.S.C. § 1803(a)(1) because Mr. Benavides performed farm labor contracting activities on their behalf is not clearly erroneous. We affirm the court's finding of liability under the MSAWPA despite defendants' alleged lack of knowledge of the Act and its applicability to them. Finally, we affirm the awards granted as a result of violations of the FLSA.