**Hipolito MARTINEZ et al., Plaintiffs,**

**v.**

**Vernon HAUCH, Defendant.**

**No. 4:92–CV–103.**

United States District Court,
W.D. Michigan, S.D.

Nov. 8, 1993.

**1210**

Philip R. Riley, Michigan Migrant Legal Assistance Project, Inc., Berrien Springs, MI, for plaintiffs.

Rodger V. Bittner, Globensky, Gleiss, Bittner & Hyrns, PC, St. Joseph, MI, for defendant.

Dennis J. Grifka, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Detroit, MI, for Michigan Employment Security Com'n, amicus curiae.

John H. Secaras, Regional Sol., U.S. Dept. of Labor, Office of Sol., Chicago, IL, Paula Wright Coleman, Linda Jan S. Pack, Monica Gallagher, Associate Sol., Judith E. Kramer, Deputy Sol., U.S. Dept. of Labor, Fair Labor Standards Div., Washington, DC, for Robert B. Reich, movant.

## *OPINION*

BENJAMIN F. GIBSON, Chief Judge.

Plaintiffs bring this action under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801–72 ("MSAW-PA"), and under Michigan tort and contract law. Pending before the Court are plaintiffs' and defendant's motions for partial summary judgment. For the reasons set forth below, plaintiffs' motion is granted and defendant's motion is denied.

### I.

Plaintiffs are migrant farm workers who worked for defendant Vernon Hauch in 1990. Along with state tort and contract law claims, plaintiffs allege various violations of the MSAWPA, including substandard labor camp conditions, a lack of toilet and sanitary facilities at work sites, and violations of terms and conditions of their employment. Defendant asserts that he is exempt from the MSAWPA under the act's "family business exemption." 29 U.S.C. § 1803(a)(1).

In response to this defense, plaintiffs filed the instant motion for partial summary disposition. Plaintiffs contend that defendant does not qualify for the "family business exemption" because an entity other than defendant or defendant's immediate family performed farm labor contracting activities for defendant.

The parties agree that in 1990 defendant used the Michigan Employment Security Commission ("MESC") Job Service. Defendant testified that in 1990 he telephoned the MESC Job Service to inform it of his need for workers and to file one or more job order forms. Based upon information defendant supplied, the MESC Job Service completed the job order forms. Potential hires reviewed the job order forms and obtained copies from the MESC Job Service. Some

potential hires took copies of the job order forms to defendant's farm and spoke with him about employment. Defendant hired some persons who obtained job order forms from the MESC Job Service, including some of the plaintiffs. It is not known whether the MESC Job Service chose specific workers to fill defendant's job orders. The MESC Job Service does not charge a fee for its service.[1]

■■ The parties agree that to qualify for the family business exemption to the MSAW-PA the defendant or his immediate family members must perform all farm labor contracting activities, which include recruiting and furnishing workers. Plaintiffs contend that because defendant used the MESC Job Service he is not exempt. Defendant argues that the service is a no-fee labor exchange and that it therefore does not undertake farm labor contracting activities. Defendant further asserts that he made all hiring decisions himself. Defendant opposes plaintiffs' motion for partial summary judgment and requests that the Court enter partial summary judgment in his favor on this issue. Amicus curiae MESC also has filed a brief in opposition to plaintiffs' motion.

### II.

Summary judgment is appropriate only where no genuine issue of fact remains to be decided so that the moving party is entitled to judgment as a matter of law. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Son, Inc. (In re Atlas Concrete Pipe, Inc.)*, 668 F.2d 905, 908 (6th Cir.1982). There is no material issue of fact for trial unless, in viewing the evidence in favor of the nonmoving party, a reasonable fact finder could return a verdict for that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510 (citations omitted).

The party moving for summary judgment bears the initial responsibility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once this has been done, the nonmoving party must come forward with specific facts showing that there is a material issue of fact on an issue which the nonmoving party will bear the burden of proof at trial. Fed.R.Civ.P. 56(e); *Celotex*, 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If after adequate discovery the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id.*

### III.

The MSAWPA provides an exemption for family businesses:

(a) The following persons are not subject to this chapter:

(1) Family business exemption.—Any individual who engages in a farm labor contracting activity on behalf of a farm, processing establishment, seed conditioning establishment, cannery, gin, packing shed, or nursery, which is owned or operated exclusively by such individual or an immediate family member of such individual, if such activities are performed only for such operation and exclusively by such individual or an immediate family member, but without regard to whether such individual has incorporated or otherwise organized for business purposes.

29 U.S.C. 1803(a)(1). Therefore, to qualify for this exemption only the defendant or his immediate family members may perform farm labor contracting activities. The legislative history explains:

Paragraph 4(a)(1) exempts any family business when, and only when, it is exclusively owned or operated by an immediate family

---

1. In their complaint, plaintiffs allege that defendant employed Marta Flores for farm labor contracting activities and that Flores is not a member of defendant's immediate family. Defendant denies that Flores undertook farm labor contracting activities on his behalf. Neither party requests summary judgment on this issue. Therefore, this Opinion will not address the alleged use of Flores for farm labor contracting activities.

member ... and that when any farm labor contracting activity is performed for such family business, that it is performed exclusively by such immediate family members, and exclusively for that business. Such business may operate in corporate form or be otherwise organized for business purposes without losing the exemption.

H.R.Rep. No. 885, 97th Cong., 2d Sess., at 10 (1982), *reprinted in* 1982 U.S.C.C.A.N. 4547, 4556.

The Sixth Circuit has held that the following persons are immediate family members:

The regulations specify who will be considered an immediate family member. 29 C.F.R. § 500.20(*o*). The "immediate family" is limited to spouses, children, stepchildren, foster children, parents, step-parents, foster parents, and siblings.

*Bueno v. Mattner*, 829 F.2d 1380, 1383 (6th Cir.1987), *cert. denied*, 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988). The MESC is not a member of defendant's immediate family.

Accordingly, the Court must determine whether the MESC Job Service's activities constitute farm labor contracting activities for defendant. The MSAWPA provides the following definition:

The term "farm labor contracting activity" means recruiting, soliciting, hiring, employing, furnishing, or transporting any migrant or seasonal agricultural worker.

29 U.S.C. § 1802(6). Plaintiffs assert that the MESC recruited and/or furnished workers for defendant.[2] Therefore, the Court first must determine the definitions of "recruit" and "furnish" as used in the definition of farm labor contracting activity.

The Eleventh Circuit recently set forth the factors under which a court should interpret the MSAWPA:

Our interpretation of AWPA is guided by several factors: the act's purpose as indicated in the legislative history; the plain meaning of the statute's language; the Department of Labor's interpretations; previous court interpretations; and other principles of statutory construction. Our ultimate goal is to give effect to congressional intent.

*Caro–Galvan v. Curtis Richardson, Inc.*, 993 F.2d 1500, 1505 (11th Cir.1993) (citations omitted). The purpose of the MSAWPA is as follows:

It is the purpose of this chapter to remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers; to require farm labor contractors to register under this chapter; and to assure necessary protection for migrant and seasonal agricultural workers, agricultural associations, and agricultural employers.

29 U.S.C. § 1801; *see also* 29 C.F.R. § 500.-1(a).

■ The act "is a remedial statute and should be construed broadly to effectuate its goals." *Escobar*, 814 F.Supp. at 1500 (citation omitted); *see also Bracamontes v. Weyerhaeuser Co.*, 840 F.2d 271, 276 (5th Cir. 1988), *reh'g denied*, 845 F.2d 1022 (5th Cir. 1988), *cert. denied*, 488 U.S. 854, 109 S.Ct. 141, 102 L.Ed.2d 113 (1988); *Caro–Galvan*, 993 F.2d at 1505. The act's legislative history states that its exemptions should be construed narrowly:

The Committee intends that the foregoing exemptions be construed narrowly in a

---

**2.** Defendants and the MESC argue that the MESC Job Service does not charge a fee and is not a "person." They therefore argue that the MESC Job Service is not a *farm labor contractor* under the MSAWPA. 29 U.S.C. § 1802(7). Under the act, a farm labor contractor is a person, with some exceptions, who (1) performs farm labor contracting activities (2) for money or other consideration. *Escobar v. Baker*, 814 F.Supp. 1491, 1498 (W.D.Wash.1993).

Whether the MESC Job Service is a farm labor contractor under the act is irrelevant to the present inquiry. The family business exemption pro-

vides that immediate family members must perform *farm labor contracting activities*. The exemption does not refer to farm labor contractors, a separate and distinct category and definition under the act. Instead, the Court must determine whether the MESC Job Service performed one or more farm labor contracting activities on defendant's behalf. The definition of farm labor contracting activity does not include the requirement that the activities be performed for money or other consideration or that the activity be performed by a "person."

manner that furthers the remedial purposes of this Act.

H.R.Rep. No. 885, 97th Cong., 2d Sess., at 12 (1982), *reprinted in* 1982 U.S.C.C.A.N at 4558; *see also Bracamontes,* 840 F.2d at 276.

■ The MSAWPA does not define the terms "recruit" or "furnish" as used in the definition of "farm labor contracting activity." The legislative history indicates that these "activities conform to and are intended to have the same meaning given such terms by the Farm Labor Contractor Registration Act of 1963," the MSAWPA's predecessor. H.R.Rep. No. 885, 97th Cong., 2d Sess., at 8 (1982), *reprinted in* 1982 U.S.C.C.A.N. at 4554. Under the regulations promulgated by the Secretary of Labor pursuant to that act, the terms "recruit" and "furnish" were to be given "their ordinary meaning as defined in the unabridged edition of Webster's New International Dictionary." *Soliz v. Plunkett,* 615 F.2d 272, 276 (5th Cir.1980).

In interpreting the terms "recruit" and "furnish," the Court must look to the act's legislative history, case law, and Webster's definitions. The Sixth Circuit has not addressed the definitions of "recruit" and "furnish." However, the Sixth Circuit has held that gratuitous recommendations do not constitute farm labor contracting activities:

> We note that the District Court also found that "defendants would hire new workers who would arrive with repeat help," ... and that at least one worker had learned about the farm through a former employee. We disagree with the court's holding that these gratuitous recommendations were also farm labor contracting activities performed on defendants' behalf.

*Bueno,* 829 F.2d at 1384 n. 3.

The MSAWPA's legislative history does not address the term "recruit" in connection with its discussion of the family business exemption or of "farm labor contracting activity." However, the legislative history briefly addresses the term in its discussion of the act's information and record keeping requirements:

> Section 201(a) provides that each farm labor contractor, agricultural employer, and agricultural association which recruits any migrant agricultural worker shall ascertain and disclose in writing to the recruited worker [enumerated information]....
>
> ....
>
> *The Committee intends that the language of this and the other protections provided by this Act, be given their plain meaning.* The Committee is also aware that the term "recruit" has not been specifically addressed by the courts and has instead been discussed in a general sense along with the other essential elements of the definition of farm labor contractor. Indeed, the realities of the migrant labor process do not allow for anything besides such a practical definition. The activity envisioned by the Committee runs the spectrum from the actual pre-employment discussion between the recruiter and the migrant worker to the filing of job orders with the interstate recruitment system established by the Wagner–Peyser Act. Both activities as well as many in between fall within the definition of recruitment under current law and should continue to do so under this Act.

H.R.Rep. No. 885, 97th Cong., 2d Sess., at 13 (1982), *reprinted in* 1982 U.S.C.C.A.N. at 4559 (emphasis added). Therefore, under the information disclosure provisions of the act, when a farmer files a job order with the MESC Job Service the farmer is recruiting.

The *Escobar* court examined the definition of "recruit" in the context of an employer's disclosure requirements:

> Courts have held that the definition of 'recruit' should be broad enough to encompass indirect recruitment: "It is reasonable to expect that when a farm spreads the word that work is available other workers not directly contacted will hear of the work and approach the farm." *Rodriguez [v. Jackson ],* 110 Lab Cas. (CCH) ¶ 35, 137, at p. 45, 925 [1988 WL 150697]. Recruitment also includes "pre-employment discussions." *Id.; Contreras v. Mt. Adams Orchard Corp.,* 744 F.Supp. 1007 (E.D.Wash.1990) ("recruit" and its derivatives means "to hire or otherwise obtain or secure the services of," and includes all pre-employment discussions that relate to a worker's employment.)

*Escobar,* 814 F.Supp. at 1502; *see also Leach v. Johnston,* 812 F.Supp. 1198, 1209 (M.D.Fla.1992). Although these cases discuss "recruit" in connection with sections other than the family business exemption or the definition of farm labor contracting activity, the discussion is instructive.

Finally, the unabridged edition of Webster's New International Dictionary provides the following definition of "recruit":

> To strengthen or supply (as an army, a military organization) with fresh or additional members; to reinforce, fill up, or make up by enlistment of personnel ... *to hire or otherwise obtain to perform services (as on a work force or for an organization); secure the services of* ... to provide with what is needed (as with fresh supplies, material, efforts) to correct or prevent depletion, exhaustion, or waste ... *to raise or seek to raise new supplies of men for service and work forces.*

*Webster's Third New International Dictionary of the English Language* 1899 (1993) (emphasis added).

The Fifth Circuit discussed the term "furnish" under the MSAWPA's predecessor:

> Webster defines the verb furnish as "to provide or supply with what is needed, useful or desirable." Webster's Third International Dictionary 923 (1971). Plunkett provided or supplied the farmers with what was needed, migrant workers, by determining the number of workers required, contacting the crew leaders and insuring that the harvest proceeded properly.

*Soliz,* 615 F.2d at 276. The unabridged edition of Webster's New International Dictionary provides the same definition of "furnish":

> To provide or supply with what is needed, useful, or desirable....

*Webster's Third New International Dictionary of the English Language* 923 (1993).

The Court next will examine the MESC Job Service's activities to determine whether under these definitions they constitute recruiting or furnishing workers for defendant. The MESC Job Service was formed pursuant to the Wagner–Peyser Act, 29 U.S.C. §§ 49 *et seq.* Mich.Comp.Laws Ann. § 421.12

(West 1978). The regulations promulgated in connection with the Wagner–Peyser Act explain that act's purpose as follows:

> The basic purpose of the employment service system is to improve the functioning of the nation's labor markets by bringing together individuals who are seeking employment and employers who are seeking workers.

20 C.F.R. § 652.2. The Fifth Circuit has held that "[t]he Act's basic objective was to establish an interstate system for the recruiting and transfer of labor." *Gomez v. Florida State Employment Service,* 417 F.2d 569, 571 (5th Cir.1969) (footnote omitted).

In 1990, defendant filed one or more job orders with the MESC Job Service when he needed workers for his farm. On the job order or orders, he indicated the job description, pay, duration of the job, number of openings, and other pertinent information. As a result of the job order or orders, defendant hired workers who had received a job order from the MESC Job Service.

The MESC Job Service forms and documents refer to the agency's activity as "recruiting." For example, the agricultural job order information form states in part:

> Nor does any job order accepted or *recruited upon* by the employment service constitute a contractual job offer to which ETA or the MESC is in any way a party.

Similarly, a September 18, 1990, letter from the director of the MESC to the U.S. Department of Labor employment and training administration regarding a funding request states that "[t]hese funds would be used to improve recruiting of U.S. agricultural workers." The director further states that the additional funds would allow the MESC to recruit more efficiently:

> With the use of the electronic bulletin boards and information update capability in significant MSFW offices, the state employment service offices would be better able to recruit and inform in-state and out-of state workers of job opportunities to fill employer job openings faster and more efficiently.
>
> ....

With a fast, efficient means of disseminating information, the state employment service agencies could offer service in an organized manner. Examples in Michigan would be the recruitment for asparagus workers in the spring, and for apple harvesters in the fall. These two activities occur outside the peak harvesting seasons and are faced with shortages of workers. With a better means of notifying and recruiting workers, the MESC staff could work more closely with the employer associations to develop stronger linkages and provide a faster means of meeting employer demand.

Finally, a March 12, 1991, MESC document notice to the public regarding a new recruitment service, entitled the U.S. Department of Labor Region V multi-state electronic information bulletin system for farmworkers, repeatedly describes the MESC Job Service activity as "recruitment of U.S. workers" and "recruitment efforts."

The Court again notes that it must strictly construe the family business exemption. The Court finds that under the facts of this action, the MESC Job Service performed farm labor contracting activities for defendant. First, the MESC Job Service supplied defendant with potential workers in response to defendant's request. Although defendant decided which potential workers to hire, the MESC Job Service informed workers of the job openings, thereby providing persons for defendant to interview. The MESC Job Service's efforts relieved defendant of the burden of finding potential hires himself. Further, the MESC describes its activities as recruitment and recruiting. The MESC states that it notifies and recruits workers to fill employer job openings and to meet employer demand.

The MESC Job Service raises or seeks to raise new supplies of workers for the work forces of employers who file job orders. This activity falls within Webster's definition of "recruit." At the very least, the MESC Job Service's activities on defendant's behalf constitute "furnishing" workers for defendant. Through its activities, the MESC Job Service supplied defendant with what was needed, potential workers for his farm. The Court finds that the MESC Job Service's work for defendant constituted more than mere gratuitous recommendations or referrals. *Bueno,* 829 F.2d at 1384 n. 3.

Defendant argues that *Flores v. Rios,* No. 3:89cv7560 (N.D.Ohio 1993), *appeal filed,* No. 93–3670 (6th Cir. June 11, 1993), is not distinguishable from the instant action. In *Flores,* the parties stipulated that the defendant corporation was a family owned business and that the defendant family members made all hiring decisions. *Id.* at 2. The parties stipulated that the bureau referred workers to the defendants:

> Defendants also obtain workers through the Ohio Bureau of Employment Services ("OBES"), a state employment service established pursuant to the Wagner–Peyser Act, 29 U.S.C. §§ 49, *et seq.* Defendants' interactions with OBES are a two-way street. The local OBES office will call Gibsonburg Canning and talk to Jerry or John Schuett or one of their full-time, regular employees, to see if they need workers. If defendants are in need of workers, defendants, or an employee at their direction, tell OBES to go ahead and refer workers to the cannery. If defendants are not in need of workers at that time, they will inform OBES of that fact. Similarly, if defendants need additional workers, Jerry or John Schuett or one of their full-time, regular employees (at defendants' direction) will call OBES to see if OBES has any workers for defendants' operation. If so, OBES will refer workers to the cannery. Neither defendants, nor any workers referred by OBES, pay for OBES' referrals.

*Id.* at 4. Based upon these facts, the court held that referral of workers by the Ohio Bureau of Employment Services "does not rise to the level of a farm labor contracting activity." *Flores,* at 4. The court's discussion is short and it does not include an analysis of the act's legislative history or the definition of "recruit" or "furnish." *Id.* at 4–5.

The Court finds that the MESC Job Service's activities for defendant were more than mere gratuitous recommendations or referrals of workers. The Court therefore re-

spectfully declines to follow the *Flores* holding.

## IV.

The Court finds that the MESC Job Service performed farm labor contracting activities for defendant. Therefore, the Court finds that defendant is not eligible for the family business exemption to the MSAWPA and that defendant is subject to the MSAW-PA. The Court will therefore grant plaintiffs' motion for partial summary judgment and deny defendant's motion for partial summary judgment.