Mary E. Guss, Law Offices of Clifford H. Smith, Ketchikan, Alaska, for plaintiffs-appellants.

Bruce Davies and Dennis McCarty, Ketchikan, Alaska, for defendant-appellee.

Before KOZINSKI, NOONAN, and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Mark Buettner and Henry G. Hamar brought a quiet title action against Kavilco, Inc., an Alaska native village corporation, claiming title to property under section 1613(c)(1) of the Alaska Native Claims Settlement Act. The district court granted summary judgment in favor of Kavilco, holding that Buettner's and Hamar's rights were governed wholly by section 1613(g) of the Act, to the exclusion of section 1613(c)(1). We reverse and remand.

**Mark BUETTNER; Henry G. Hamar, Plaintiffs–Appellants,**

v.

**KAVILCO, INC., Defendant–Appellee.**

No. 87–4435.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 2, 1988.

Decided Oct. 26, 1988.

## I

## FACTS

On July 13, 1971, Mark Buettner obtained a revocable and non-transferable special use permit from the United States Forest Service. The permit granted Buettner permission to build a year-round residence on Lot 7 of the Happy Harbor Residence Group, located on Kasaan Island near Ketchikan, Alaska. The permit, while renewable, expires December 31, 1990.

During the summer of 1971, Buettner and his wife began clearing the Happy Harbor lot and constructing their cabin. Meanwhile, they lived aboard a small cabin cruiser moored in the harbor nearby. By

late October, winter was coming on. The Buettners had not completed their cabin, and a combination of the weather and dwindling finances forced them to leave for the winter. They returned to Happy Harbor in the spring of 1972 and finished building the cabin.

On March 13, 1972, Henry Hamar and his wife purchased a cabin located on Lot 8 of the Happy Harbor Residence Group from Carl Porter. The cabin had been used by Porter as his home since the winter of 1969–1970, also pursuant to a United States Forest Service special use permit. The Hamars obtained their own special use permit for Lot 8 in May of 1972. Their permit expires on December 31, 1991.

The native village of Kasaan is located on a separate island approximately five miles from Happy Harbor. Kavilco, Inc. is the native corporation for the village of Kasaan. In December of 1971, Congress passed the Alaska Native Claims Settlement Act, 43 U.S.C. §§ 1601–1629e (1986 & Supp.1988) ("ANCSA"), which extinguished aboriginal land claims of Alaskan Natives and gave Alaska native corporations the right to select areas of public lands. Kavilco later selected as part of its land allotment under ANCSA the lots located at Happy Harbor. On December 4, 1979, the United States issued a land patent to Kavilco which included the Happy Harbor lots. This patent was issued subject to Buettner's and Hamar's special use permits under 43 U.S.C. § 1613(g).

In January 1980, the Forest Service transferred administration of the special use permits to Kavilco pursuant to 43 U.S.C. § 1613(g). Kavilco chose to administer the permits by sending new lease agreements to the permittees. These lease agreements increased the permittees' rent. Buettner and Hamar refused to sign the new leases and instead sent Kavilco checks for the amounts required by the special use permits. Kavilco rejected the checks and unsuccessfully attempted forcible entry and detainer proceedings against Buettner and Hamar. On January 25, 1983, Buettner and Hamar commenced a quiet title action in Alaska state court. Kavilco removed the case to federal district court on the basis of federal question jurisdiction

under 28 U.S.C. § 1441(b). The district court granted summary judgment in favor of Kavilco. Buettner and Hamar appeal.

## II

## ANALYSIS

### A. *Standard of Review*

We review a grant of summary judgment de novo. *Ford v. Manufacturers Hanover Mortgage Corp.,* 821 F.2d 1520, 1523 (9th Cir.1987). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any triable issues of material fact and whether the district court correctly applied the relevant substantive law. *Ashton v. Cory,* 780 F.2d 816, 818 (9th Cir.1986). Questions of statutory interpretation are subject to de novo review. *Mada–Luna v. Fitzpatrick,* 813 F.2d 1006, 1011 (9th Cir. 1987).

### B. *Interpretation of ANCSA §§ 1613(c)(1) and 1613(g)*

This appeal arises out of what the district court perceived as a tension between two subsections of ANCSA § 1613. Buettner and Hamar rely on ANCSA § 1613(c)(1), which provides:

Each patent issued pursuant to subsections (a) and (b) of this section shall be subject to the requirements of this subsection. Upon receipt of a patent or patents:

(1) the Village Corporation shall first convey to any Native or non-Native occupant, without consideration, title to the surface estate in the tract occupied as of December 18, 1971 ... as a primary place of residence, or as a primary place of business, or as a subsistence campsite, or as a headquarters for reindeer husbandry.

43 U.S.C. § 1613(c)(1). Buettner and Hamar argue that they occupied Lots 7 and 8 as their primary residences as of December 18, 1971, and, therefore, section 1613(c)(1) mandates that Kavilco convey title to these lots to them.

Kavilco contends that section 1613(g), rather than section 1613(c)(1), controls Buettner's and Hamar's claims. Section 1613(g) provides in pertinent part:

All conveyances made pursuant to this chapter shall be subject to valid existing rights. Where, prior to patent of any land or minerals under this chapter, a lease, contract, permit, right-of-way, or easement ... has been issued for the surface or minerals covered under such patent, the patent shall contain provisions making it subject to the lease, contract, permit, right-of-way, or easement, and the right of the lessee, contractee, permittee, or grantee to the complete enjoyment of all rights, privileges, and benefits thereby granted to him. Upon issuance of the patent, the patentee shall succeed and become entitled to any and all interests of the State or the United States as lessor, contractor, permitter, or grantor, in any such leases, contracts, permits, rights-of-way, or easements covering the estate patented.... The administration of such lease, contract, permit, right-of-way, or easement shall continue to be by the State or the United States, unless the agency responsible for administration waives administration.

43 U.S.C. § 1613(g). The district court concluded that the Forest Service special use permits held by Buettner and Hamar were "valid existing rights" governed by section 1613(g). Further, the district court held that this precluded Buettner and Hamar from obtaining title to Lots 7 and 8 under section 1613(c)(1).

We disagree. A straightforward reading of section 1613(c)(1) does not preclude claimants like Buettner and Hamar from claiming rights under it. In cases involving statutory construction, "our starting point must be the language employed by Congress," *Reiter v. Sonotone Corporation*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979), and we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). Thus, "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Product Safety Commission v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The plain language of ANCSA

§ 1613(c)(1) requires conveyance of title to the surface estate to anyone occupying the land "as a primary place of residence" on the magic date of December 18, 1971. This section does not exclude Buettner and Hamar because of their permittee status.

Moreover, as permittees, Buettner and Hamar were entitled to occupy the land although it was owned by someone else. One who does not own land but who occupies it is either there with permission or without it. It would be an odd statute indeed which conferred rights to obtain a deed on persons occupying property without permission, but which denied these rights to lawful occupants. Consistent with this view, we recently held in *Donnelly v. United States*, 841 F.2d 968 (1988), that "trespassers could not take advantage of § 1613(c)(1)." *Id.* at 975. Also, section 1613(c)(1) does not apply to homesteaders because they are specifically covered by section 1621(b). If trespassers and homesteaders are beyond the reach of section 1613(c)(1), the section must apply to some other class of persons. We hold that permittees such as Buettner and Hamar are within this class. Thus, the district court erred in concluding that because Buettner and Hamar held permits for the occupancy of their lots they were precluded from asserting title claims under ANCSA § 1613(c)(1).

We discern no inconsistency between this plain reading of section 1613(c)(1) and the provisions of section 1613(g). The latter section applies to lessees, contractees, permittees, and grantees of rights-of-way and easements. It is true that a person with rights under section 1613(g) might also have rights under section 1613(c)(1). On the other hand, persons having rights under section 1613(g) will not necessarily come within the scope of section 1613(c)(1). For example, United States Forest Service special use permit-holders who did not occupy their sites as a primary residence on December 18, 1971, would be protected only by section 1613(g).

Finally, we note that our interpretation of section 1613(c)(1) comports with that given it by the Alaska Supreme Court. In *Hakala v. Axtam Corporation*, 753 P.2d 1144 (Alaska 1988), the Alaska court ana-

lyzed the "primary place of business" clause of section 1613(c)(1) in considering the claim of hunting guides who used a cabin site as their primary place of business. The Alaska court opined that while ANCSA was designed to protect rights of Alaska Natives, Congress did not intend "to convey lands to native corporations to the exclusion of those who had previously utilized the lands in an established, legal and routine fashion. Otherwise, [there was no discernible] reason for Congress to have included the reconveyance clause in [section 1613(c)(1)]." *Id.* at 1147. United States Forest Service permittees like Buettner and Hamar hold long-term, renewable permits. They are required to build and live in their residences. They thus appear to be the logical beneficiaries of section 1613(c)(1). Like the Alaska Supreme Court, we discern "no [other] reason for Congress to have included the reconveyance clause in [section 1613(c)(1)]."

But our holding that Buettner and Hamar may be able to assert rights under section 1613(c)(1) does not mean that they are entitled to prevail in this case. As to Buettner, the district court will have to determine whether, in light of all the relevant facts, he occupied Happy Harbor Lot 7 as his primary residence on December 18, 1971. There is some evidence that the Buettners intended to make this lot their principal residence even though they were temporarily absent from the cabin site on December 18, 1971. By that time they had constructed part of their cabin on the site. When they traveled south for the winter, they allegedly left almost all of their possessions at Happy Harbor. While they were gone they did not establish any other residence. They returned to Happy Harbor as soon as it was feasible for them to do so. When they did return, they finished their cabin and took up permanent residence. Whether these facts, together with such other facts as may be developed at trial, will be sufficient to satisfy the requirements of ANCSA § 1613(c)(1) is something the trial court will have to determine.

As to Hamar, it is clear that he did not occupy Lot 8 on December 18, 1971. But it appears that his predecessor, Porter, did. The trial court did not reach the question whether Hamar could take advantage of Porter's December 18, 1971 occupancy, or whether apart from any "tacking" considerations this might involve, Porter would be entitled to a deed to Lot 8 in his own right based upon his claim of occupancy on December 18, 1971, and if so, whether Porter would be required to convey title to Hamar. These questions should be resolved by the district court as it considers Hamar's claim. To do so it would appear that Porter is a necessary party and should be joined in the action. *See* Fed.R.Civ.P. 19(a)(1).

REVERSED AND REMANDED.