**Garth CONLAN, Plaintiff–Appellant,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Defendant–Appellee.**

No. 94–15878.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 14, 1995.

Decided Feb. 2, 1996.

Richard T. Tarrant, Bartko, Tarrant & Miller, San Francisco, California, for plaintiff-appellant.

Paula Wright Coleman, United States Department of Labor, Washington, D.C., for defendant-appellee.

Before: NORRIS, BEEZER, and TROTT, Circuit Judges.

BEEZER, Circuit Judge:

Garth Conlan appeals the district court's order affirming the final decision of the Secretary of Labor imposing a civil money penalty of $23,250. Conlan was penalized for violating the Migrant and Seasonal Agricultural Worker Protection Act ("MSPA"). Conlan owned a facility and real property that, unbeknownst to him, were used by migrant agricultural workers as housing. The housing did not comply with federal and state health standards. Conlan contends that the district court erred in upholding the penalty. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, reverse in part, and remand.

I

Garth Conlan owns a ranch of 1500 acres, more or less, in Monterey, California. Although at one time he farmed the ranch, Conlan discontinued farming in 1984 and began leasing most of his property to tenant farmers. Conlan occupied a personal residence on the property.

In the summer of 1988, individuals working for the Monterey County Planning Department and the Monterey County Health Department discovered that migrant workers were residing on Conlan's ranch in substandard conditions. Along the eastern border of the Conlan ranch, migrant workers had established an unauthorized camp consisting of 30 to 50 shelters made of cardboard and plastic sheets. No water system or sewage system served the camp. Garbage and sewage had accumulated in the area. On the southwest corner of the ranch, migrant workers were living in a structurally inadequate, dilapidated building (the "duplex"). Farm workers were permitted to live there by Juan Marquez, Jr., one of Conlan's tenant farmers. Neither the unauthorized camp nor the duplex was visible from Conlan's residence. The county agencies did not inform Conlan that migrant workers were occupying shelters on the property.

On August 11, 1988, acting on information received from county agencies, United States Department of Labor ("DOL") investigators entered the Conlan ranch pursuant to a search warrant. Based on the evidence garnered from the search, the DOL assessed a civil penalty against Conlan for violating the housing safety and health provision of the MSPA.[1] 29 U.S.C. §§ 1823(a), 1853(a). After a hearing, an administrative law judge ("ALJ") ordered Conlan to pay the civil money penalty of $23,250 assessed by the DOL.

---

1. Marquez, the tenant farmer who gave the migrant workers permission to live in the duplex, was not fined because he qualified as a family farmer and was thus exempt from liability under the MSPA. 29 U.S.C. § 1803(a)(1).

The district court affirmed the ALJ's decision.

Conlan contends that he did not know that migrant workers were living in the camp and the duplex. Further, he contends that he specifically instructed Marquez as a tenant farmer that Marquez could not use the duplex unless and until he brought it "up to code." The ALJ found that there was no evidence that Conlan knew of the unauthorized camp and that it could not be inferred that Conlan had such knowledge because the ranch is extensive and hill-covered. The ALJ did not make a finding as to whether or not Conlan was aware that the duplex housed migrant workers, but the ALJ did find that Conlan had knowledge of the intended use of the duplex. The ALJ found that it was unclear whether Conlan had prohibited Marquez from using the duplex if it was not repaired.

## II

An agency's interpretation of a statute is a question of law that we review de novo. *Forest Conservation Council v. Rosboro Lumber Co.*, 50 F.3d 781, 783 (9th Cir. 1995). In that review, we ask two questions. First, we determine "whether Congress has directly spoken to the precise question at issue." *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). If so, we give force to the "unambiguously expressed intent of Congress." *Id.* at 843, 104 S.Ct. at 2782. If the statute is silent or ambiguous on a particular point, however, we defer to the agency's interpretation if it is a "permissible construction of the statute." *Id.*

## III

In 1982, Congress enacted the MSPA, 29 U.S.C. §§ 1801–1872 (as revised), to protect the health and safety of migrant farm workers. This case of first impression requires the interpretation of sections 1823(a) and 1853(a). Section 1853(a) provides for civil money penalties for violations of the MSPA. It states that "any person who commits a violation of this chapter or any regulation under this chapter, may be assessed a civil money penalty of not more than $1,000 for each violation." Section 1823(a) provides that "each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers shall be responsible for ensuring that the facility or real property complies with substantive Federal and State safety and health standards applicable to that housing."

### A

Conlan argues that we should interpret section 1853(a) to include a scienter requirement. We disagree. When we construe statutory language, we assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Buettner v. Kavilco, Inc.*, 860 F.2d 341, 343 (9th Cir.1988) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979)). "We determine the plain meaning of a statute by looking 'to the particular statutory language at issue, as well as the language and design of the statute as a whole.'" *Seldovia Native Ass'n, Inc. v. Lujan*, 904 F.2d 1335, 1341 (9th Cir.1990) (quoting *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291, 108 S.Ct. 1811, 1817, 100 L.Ed.2d 313 (1988)).

Section 1853(a) does not contain scienter language. "Any person who commits a violation" may be assessed a penalty. 29 U.S.C. § 1853(a). Had Congress intended a scienter requirement, it could easily have said so as it did in other sections of the MSPA. For example, the MSPA's criminal enforcement provision, 29 U.S.C. § 1851(a), requires a showing that a person "willfully and knowingly" violated the Act before criminal penalties will be imposed. Likewise, the MSPA's private right of action provision, 29 U.S.C. § 1854(c)(1), requires a showing that the defendant "intentionally" violated a provision of the MSPA before damages can be awarded. Congress knew how to require scienter when it wanted to, and "[i]n the face of such obvious congressional action we will not write something into the statute which Congress so plainly left out." *U.S. v. Hoflin*, 880 F.2d 1033, 1038 (9th Cir.1989), *cert. denied*, 493

U.S. 1083, 110 S.Ct. 1143, 107 L.Ed.2d 1047 (1990).

### B

■■■■Before strict liability attaches under section 1853(a), a person must have violated a provision of the MSPA. Conlan was fined under section 1853(a) for having violated section 1823(a). The DOL interpreted section 1823(a) to allow imposition of liability upon finding that a person is an owner of a substandard facility or real property upon which migrant workers reside. According to the DOL interpretation, if a person is such an owner, and the facility or real property is substandard, that person has committed a violation. It is undisputed that Conlan owned the facility, the duplex, and the real property, the camp, that were used by the migrant workers as housing. It is also undisputed that the housing was substandard. Thus, according to the DOL, Conlan was correctly penalized.

Under the DOL's interpretation, the liability possibilities are incredible. If a migrant worker slept on a bench in a city park, the city could be penalized because the bench did not comply with applicable safety and health standards. Likewise, a person living in California who owned a vacation ranch in Montana could be penalized if migrant workers trespassed upon that person's land and set up a camp, despite his lack of knowledge of or consent to the camp. Such results are not supported by the plain language of the statute.

In addition to requiring a "person who owns or controls" a substandard "facility or real property," section 1823(a) requires that the facility or real property be "used as housing for migrant agricultural workers." The DOL argues that because the migrant workers were using Conlan's property as housing, this requirement was met. The DOL, however, misreads this requirement. Section 1823(a) says "used as housing *for* migrant agricultural workers" not "used as housing *by* migrant agricultural workers." The plain meaning of the preposition "for" is that the housing must be provided to the migrant agricultural workers by someone other than themselves. The owner of the facility or property need not use it to house the workers, but someone in control of the facility or property must.

Conlan was correctly penalized for the substandard conditions found at the duplex. Conlan owned the facility, the facility did not comply with applicable safety and health standards, and the facility was used by Marquez "as housing *for*" migrant workers. Conlan violated section 1823(a) and as such was strictly liable for civil penalties under section 1853(a).

Conlan was improperly penalized, however, for the housing conditions at the unauthorized camp. Conlan owned the real property on which the camp was situated and the housing conditions were substandard, but there is no evidence in the record that anybody other than the migrant workers themselves provided the housing in which they lived.

■■■■It is clear that Conlan did not provide the housing. The ALJ found that there was no evidence that Conlan knew of the unauthorized camp and that it could not be inferred that Conlan had such knowledge because the ranch is extensive and hill-covered. Without at least actual or implied knowledge that the migrant workers were camped on his property, Conlan cannot be said to have used his real property for housing migrant workers. There may be circumstances in which someone who controls real property or a facility can be said to be using it to house migrant workers although the workers initially trespassed on the land. *See, e.g., Avila v. A. Sam & Sons,* 856 F.Supp. 763 (W.D.N.Y.1994) (holding agricultural employer violated section 1823(a) when migrant workers slept outside and in a van on premises because employer was aware of the housing violations and allowed the migrant workers to stay), *aff'd,* 60 F.3d 812 (2d Cir.1995) (unpublished disposition). When one in good faith is unaware of the presence of migrant workers, however, he cannot, in the plain meaning of the phrase, be said to be using real property or a facility "as housing *for*" migrant workers.

It also cannot be said that Conlan's tenant farmers housed the migrant workers in the

camp. There is no evidence in the record that one of Conlan's tenant farmers used the real property at issue as housing for the migrant workers.

### IV

■ Because the meanings of sections 1853(a) and 1823(a) are clear, Conlan's argument that they are unconstitutionally vague fails. Conlan argues that these sections must be interpreted as including a scienter requirement to avoid being unconstitutionally vague.

■ A challenge to the constitutionality of a federal statute is reviewed de novo. *Moser v. FCC,* 46 F.3d 970, 973 (9th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 2615, 132 L.Ed.2d 857 (1995). "To pass constitutional muster against a vagueness attack, a statute must give a person of ordinary intelligence adequate notice of the conduct it proscribes." *United States v. 594,464 Pounds of Salmon,* 871 F.2d 824, 829 (9th Cir.1989). A statute providing for civil penalties is "reviewed with somewhat 'greater tolerance' than one involving criminal penalties." *Id.*

Sections 1853(a) and 1823(a) are not unconstitutionally vague. Section 1853(a) plainly does not contain scienter language, while other provisions of the MSPA do, and thus, Conlan was adequately warned that scienter was not required. Section 1823(a) plainly requires the owner of a facility or real property that is "used as housing for migrant agricultural workers" to ensure that the facility or real property complies with applicable safety and health standards. Section 1823(a) does not require that the owner know that migrants are living on his property. It simply, and plainly, requires that the owner or someone else with the right to control the property use it for housing migrant workers. Conlan was adequately warned that to avoid liability under section 1823(a), he was required to prevent his tenant farmers from using his facilities or real property to house migrant workers under substandard living conditions.

### V

The district court's order affirming the final decision of the Secretary of Labor is affirmed in part and reversed in part. We affirm the order in so far as it affirms the finding of a violation at the duplex, but we reverse the affirmance of the finding of violations at the unauthorized camp. We remand to the district court for elimination of that portion of the penalty attributable to the conditions at the unauthorized camp.[2]

AFFIRMED in part; REVERSED in part and REMANDED.

---

**2.** We note that section 1853(a) limits the authorized civil money penalty to "not more than $1,000 for each violation." Conlan has not appealed the calculation of his penalty.

