FOREST GUARDIANS, a nonprofit corpo-
ration; Southwest Center for Biological
Diversity, a nonprofit corporation; and
Dr. Robin Silver, an individual, Plain-
tiffs–Appellants,

v.

Mike DOMBECK, in his official capacity
as Chief, United States Forest Service,
Defendant–Appellee,

Stone Container Corp., Intervenor–
Appellee.

FOREST GUARDIANS, a nonprofit corpo-
ration; Southwest Center for Biological
Diversity, a nonprofit corporation; and
Dr. Robin Silver, an individual, Plain-
tiffs–Appellees,

Precision Pine & Timber, Inc.,
Intervenor–Appellant,

v.

Mike DOMBECK, in his official capacity
as Chief, United States Forest Service,
Defendant–Appellee,

Stone Container Corp., Intervenor–
Appellee.

Nos. 97–16206, 97–16446.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 6, 1997.

Submitted as to 97–16446*
Nov. 6, 1997.

Decided Dec. 15, 1997.

* The panel unanimously finds this case suitable for
submission on the record and briefs and without

oral argument. Fed. R.App. P. 34(a); Ninth Cir-
cuit Rule 34–4.

Steven Sugarman, Santa Fe, NM, Mark Hughes, Earthlaw, Denver, CO, for plaintiffs–appellants–plaintiffs–appellees.

Gary G. Stevens, Saltman & Stevens, Washington, DC, for intervenor–appellant Precision Pine & Timber.

J. Carol Williams, United States Department of Justice, Washington, DC, for defendant–appellee.

Richard Rosenstock, Santa Fe, NM, for amicus La Compania Ocho.

Before: CHOY, GOODWIN, and T.G. NELSON, Circuit Judges.

PER CURIAM.

## OVERVIEW

Forest Guardians, Southwest Center for Biological Diversity, and Dr. Robin Silver (collectively "Forest Guardians"), filed suit against Mike Dombeck in his official capacity as Chief of the United States Forest Service seeking a declaratory judgment and injunctive relief for alleged violations of the National Forest Management Act ("NFMA"), 16 U.S.C. §§ 1600 *et seq.* Forest Guardians appeal from the district court's summary judgment in favor of the Forest Service. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## FACTS AND PROCEDURAL HISTORY

Enacted in 1976, the NFMA provides a statutory framework for the management of National Forest lands. *See* 16 U.S.C. §§ 1600 *et seq.* The NFMA directs the Secretary of Agriculture ("Secretary") to develop Land and Resource Management Plans ("LRMPs") for units of the National Forest System in order to provide for multiple uses and sustained yield of the various forest resources on a coordinated basis. *See* 16 U.S.C. § 1604(e). The National Forest System, administered by the Forest Service, consists of some 154 national forests in forty states. The Forest Service functions through a regional system composed of nine regions, each under the supervision of a regional forester.

Region 3, the Southwestern Region at issue in this appeal, encompasses six national forests in Arizona and five national forests in New Mexico. Forest plans for those eleven forests were completed between 1985 and 1988. In June 1996, the Forest Service

amended the LRMPs for the Southwestern Region forests to provide new standards and guidelines for management of the Mexican spotted owl, northern goshawk, old growth, and grazing activities on national forest lands. New restrictions were imposed on logging of old-growth forests and on livestock grazing activities. In the "Record of Decision for Amendment of Forest Plans" ("ROD") in the Southwestern Region, the regional forester specified that the 1996 Plan Amendments would apply only to "new permits, new contracts, and other new instruments for the use and occupancy of" national forest lands in the Southwestern Region.

On October 1, 1996, Forest Guardians filed a complaint for declaratory judgment and injunctive relief against the Forest Service in the Arizona District Court. Forest Guardians alleged that the Forest Service was violating the NFMA because the Forest Service's ROD stated that decisions made prior to the 1996 Plan Amendments, which were still being implemented, would not have to conform to the new standards and guidelines. Forest Guardians sought to enjoin implementation of all forest management activities not consistent with the newly amended forest plans, and to enjoin all future authorizations for the use and occupancy of national forest lands not consistent with those plans. Forest Guardians moved for a preliminary injunction and both parties filed cross-motions for summary judgment.

Pending the district court's resolution of those motions, this court temporarily enjoined certain Forest Service activities in the Southwestern Region. On June 26, 1997, the district court held that the Forest Service's implementation of the 1996 Plan Amendments did not violate the NFMA, and granted summary judgment for the Forest Service. The district court also disposed of a number of motions filed by individual timber harvesting companies. Stone Container Corporation's motion to intervene was granted. La Compania Ocho, Inc.'s motion to participate as amicus curiae was granted. Precision Pine & Timber, Inc.'s ("Precision Pine") motion to participate as amicus curiae was granted but its motion to intervene was denied.

Forest Guardians timely appealed, and sought emergency injunctive relief from this court. Precision Pine appealed the denial of its motion to intervene. Pending resolution of this appeal, this court enjoined certain forest management activities within the Southwestern Region inconsistent with the new standards and guidelines established by the 1996 Plan Amendments.

This case presents an issue of first impression. The question before us is whether the Forest Service's decision to implement the 1996 Plan Amendments prospectively, but not retroactively, violates the NFMA. We hold that it does not.

## A. Standard of Review

■ A grant of summary judgment is reviewed de novo. See Forest Conservation Council v. Rosboro Lumber Co., 50 F.3d 781, 783 (9th Cir.1995). The interpretation of a statute is a question of law which is also reviewed de novo. See id.; Conlan v. United States Dep't of Labor, 76 F.3d 271, 274 (9th Cir.) (reviewing an agency's interpretation of a statute), cert. denied, —— U.S. ——, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996).

■ "We accord a high degree of deference to an agency's interpretation of the statutory provisions and regulations it is charged with administering." Natural Resources Defense v. United States Dep't of Interior, 113 F.3d 1121, 1124 (9th Cir.1997). "Nonetheless, the judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." Id. (quoting Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2782 n. 9, 81 L.Ed.2d 694 (1984)) (internal quotations omitted).

■ To ascertain the intent of Congress, we first must determine "whether Congress has directly spoken to the precise question at issue." Conlan, 76 F.3d at 274 (quoting Chevron U.S.A., Inc., 467 U.S. at 842, 104 S.Ct. at 2781)(internal quotations omitted). If so, we must "give force to the 'unambiguously expressed intent of Congress.'" Id. (quoting Chevron U.S.A., Inc., 467 U.S. at

843, 104 S.Ct. at 2782). If the statute is silent or ambiguous on a particular point, the question then becomes whether the agency's interpretation is based on a "permissible construction of the statute." *Id.* (internal quotations omitted).

■■■ When construing statutory language, "we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *Id.* (quoting *Buettner v. Kavilco, Inc.,* 860 F.2d 341, 343 (9th Cir.1988))(internal quotations omitted). A statute's plain meaning is determined "by looking to the particular statutory language at issue, as well as the language and design of the statute as a whole." *Id.* (quoting *Seldovia Native Ass'n, Inc. v. Lujan,* 904 F.2d 1335, 1341 (9th Cir.1990))(internal quotations omitted).

## B. Amendments to LRMPs Under the NFMA

■■■ The statute at issue in this case, 16 U.S.C. § 1604, titled "National Forest System land and resource management plans," requires the Secretary to "develop, maintain, and, as appropriate, revise land and resource management plans for units of the National Forest System." *See* 16 U.S.C. § 1604(a). The NFMA provides for a two-stage approach to forest planning. *See Inland Empire Public Lands v. United States Forest Service,* 88 F.3d 754, 757 (9th Cir.1996). A team first develops a proposed LRMP, "together with a draft and final [Environmental Impact Statement]." *Id.* (quoting *Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1511 (9th Cir.1992))(internal quotations omitted). Once approved, "direct implementation of the LRMP occurs at a second stage, when individual site-specific projects are proposed and assessed." *Id.* (quoting *Mumma,* 956 F.2d at 1512)(internal quotations omitted). "These site-specific projects must be consistent with the stage-one, forest-wide plan." *Id.* (citing *Mumma,* 956 F.2d at 1512; *Sierra Club v. Espy,* 38 F.3d 792, 795 (5th Cir.1994); and 16 U.S.C. § 1604(i)).

Forest Guardians contend that the Forest Service's decision not to apply the 1996 Plan Amendments retroactively to projects that had already been authorized violates the NFMA because the plain language of the "consistency" provision, 16 U.S.C. § 1604(i), mandates that pre-amendment approved projects be updated so as to comply with the new standards and guidelines. Section 1604(i) reads:

> Resource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands shall be consistent with the land management plans. Those resource plans and permits, contracts, and other such instruments currently in existence shall be revised as soon as practicable to be made consistent with such plans. When land management plans are revised, resource plans and permits, contracts, and other instruments, when necessary, shall be revised as soon as practicable. Any revision in present or future permits, contracts, and other instruments made pursuant to this section shall be subject to valid existing rights.

16 U.S.C. § 1604(i).

The Forest Service, however, argues that, in drafting the NFMA, Congress intended to grant the Secretary discretion in amending existing forest plans, including the discretion to determine how those amendments will be implemented. This argument is premised upon section 1604(f)(4), which requires that LRMP's developed in accordance with section 1604 shall:

> be amended in any manner whatsoever after final adoption after public notice, and, if such amendment would result in a significant change in such plan, in accordance with the provisions of subsections (e) and (f) of this section and public involvement comparable to that required by subsection (d) of this section

16 U.S.C. § 1604(f)(4).

We agree with the Forest Service. The plain language of section 1604(f)(4) permits the Secretary to amend existing LRMPs "in any manner whatsoever." *See id.* Since Congress has spoken on this issue, we must give force to its expressed intent. *See Conlan,* 76 F.3d at 274. In our view, this grant of authority includes the ability to implement the 1996 Plan Amendments prospectively

only. *See* 16 U.S.C. § 1604(f)(4); *Conlan,* 76 F.3d at 274.

■ Significantly, our reading comports with the established legal principle that absent explicit legislative intent to the contrary, "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Chenault v. United States Postal Service,* 37 F.3d 535, 537 (9th Cir.1994) (quoting *Landgraf v. USI Film Prods.,* 511 U.S. 244, 272, 114 S.Ct. 1483, 1500, 128 L.Ed.2d 229 (1994))(internal quotations omitted). The language of § 1604(i) does not explicitly mandate the retroactive application of *all* amendments. In fact, it expressly precludes the retroactive application of amendments where such retroactive application would impair existing rights. § 1604(i) states in pertinent part:

> Any revision in present or future permits, contracts, and other instruments made pursuant to this section shall be subject to valid existing rights.

16 U.S.C. § 1604(i).

Legislative history indicates that this provision was "needed to make it clear that the government is not taking any private rights or other interest as part of [its] action in compliance with this section." S.Rep. No. 94–893, at 47–48 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6662, 6706.

In this case, the retroactive application of the 1996 Plan Amendments would impair the valid existing rights of parties who held authorizations, permits, or contracts for the use of Forest resources in the Southwestern regional forests prior to the Amendments' adoption. The point is underscored by the losses that Precision Pine has already suffered as the result of this court's temporary suspension of its timber sales contracts with the Forest Service because they do not comply with the new Amendments.

Because § 1604(i) does not prohibit prospective-only implementation of plan amendments, the Forest Service activities at issue here are not inconsistent with the newly amended forest plans. Through prospective-only application of the 1996 Plan Amendments, prior existing agreements are indirectly "grandfathered" into the new forest plans, leaving the new standards applicable only to future agreements. Thus, applying the old standards to prior existing agreements is consistent with the new plans, and does not violate § 1604(i).

Accordingly, we cannot say that the Forest Service illegally restricted the application of the 1996 Amendments to new authorizations, contracts, and permits.

## C. Conclusion

We affirm the summary judgment in favor of the Forest Service. This court's temporary injunction effecting Forest Service management activities approved prior to the adoption of the 1996 Plan Amendments, including the La Manga timber sale, is vacated.[1]

## PRECISION PINE & TIMBER, INC.

With regard to Precision Pine's appeal, we agree that the district court should have granted intervention as of right. *See Northwest Forest Resource Council v. Glickman,* 82 F.3d 825, 836–38 (9th Cir.1996); *Forest Conservation Council v. United States Forest Serv.,* 66 F.3d 1489, 1493–99 (9th Cir. 1995). However, our affirmance renders this issue moot because there is no longer a case remaining in the district court in which Precision Pine could intervene.

**AFFIRMED.**

---

1. Because we affirm the district court's summary judgment on the merits, we need not and do not address whether the doctrine of res judicata applies in this case with regard to the La Manga timber sale. Accordingly, all related motions currently pending before this court are denied as moot.