NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

NOV 18 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| BLUE MOUNTAINS BIODIVERSITY PROJECT, an Oregon nonprofit corporation,<br><br>        Plaintiff - Appellant,<br><br>  v.<br><br>UNITED STATES FOREST SERVICE, an agency of the United States Department of Agriculture; CRAIG P. TRULOCK, Forest Supervisor, Malheur National Forest, in his official capacity,<br><br>        Defendants - Appellees. | No. 23-3049<br><br>D.C. No. 2:21-cv-01033-HL<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Karin J. Immergut, District Judge, Presiding

Argued and Submitted October 22, 2024
Portland, Oregon

Before: HAMILTON,[**] VANDYKE, and H.A. THOMAS, Circuit Judges.

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable David F. Hamilton, United States Circuit Judge for the Court of Appeals, 7th Circuit, sitting by designation.

Blue Mountains Biodiversity Project ("Blue Mountains") appeals the district court's decisions granting summary judgment for the U.S. Forest Service (the "Service") and awarding the Service its costs. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

We review a grant of summary judgment de novo and review the agency's decision to approve the Camp Lick Project (the "Project") under the Administrative Procedure Act to determine whether the approval was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 957 F.3d 1024, 1032 (9th Cir. 2020). We review a district court's award of claimed costs for abuse of discretion. *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 592 (9th Cir. 2000) (en banc).

1. The Service did not violate the National Forest Management Act ("NFMA") by adopting site-specific amendments that apply to the Project Area, rather than forest-wide amendments. NFMA provides the Service with broad discretion to amend a forest plan in "any manner whatsoever." 16 U.S.C. § 1604(f)(4); *see also Forest Guardians v. Dombeck*, 131 F.3d 1309, 1312 (9th Cir. 1997). Here, the "Forest Service's decision to limit the scope of the amendment was informed by site-specific characteristics and Forest Service expertise." *Lands Council v. Martin*, 529 F.3d 1219, 1228 (9th Cir. 2008). The Service explained that deviations in tree stand density and the prevalence of certain species of trees outside

of the historical norms (particularly the grand and Douglas firs) put the Project Area at greater risk of severe wildfires, insect infestations, and disease. These conditions in the Project Area necessitated a site-specific amendment, above and beyond conditions in the Malheur National Forest ("Forest") as a whole. The adopted amendments specifically addressed the Project Area's underlying concerns, allowing for the removal of the tree species crowding out the historically prevalent species and the thinning of certain tree stands to promote conditions for old growth, thereby reducing the tree density and catastrophic wildfire risk. Thus, the Service complied with NFMA because it provided a "rational connection between" these site-specific attributes "and the choice" to adopt a site-specific amendment. *Martin*, 529 F.3d at 1228; *see also Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 900 (9th Cir. 2002).

    2.   The Service complied with the National Environmental Policy Act ("NEPA") with respect to each of Blue Mountains' four claims.

    First, Blue Mountains argues the Service did not adequately assess the Project's cumulative impacts, "the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions." 40 C.F.R. §1508.7; *see Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1075 (9th Cir. 2002).[1] We

---

[1] "The Council on Environmental Quality ('CEQ') issues regulations to guide agencies in determining what actions are subject to NEPA requirements." *Blue*

give considerable deference to the Service's determination of the geographical scope of its cumulative impacts analysis. *See Sierra Club v. Bosworth*, 510 F.3d 1016, 1030 (9th Cir. 2007) (recognizing that the geographic scope determination "is a task assigned to the special competency of the appropriate agencies"). Here, the Service's decision to use different geographic scopes when assessing the cumulative impact on different resources and wildlife was based upon a reasoned "application of scientific methodology." *Dombeck*, 304 F.3d at 902. We will not disturb the Service's exercise of informed discretion. *See League of Wilderness Defs. Blue Mountains Biodiversity Project v. Allen*, 615 F.3d 1122, 1130 (9th Cir. 2010).

The Service also provided "some quantified or detailed information" and a "useful analysis of the cumulative impacts of past, present, and future projects." *Ocean Advocs. v. U.S. Army Corps of Eng'rs*, 402 F.3d 846, 868 (9th Cir. 2005). The Service concluded, after considering numerous studies and data, that the Project would result in increased acreage of relatively large old-growth trees over time. Again, we provide the highest deference to this "fully informed and well considered" finding. *Id.*

Second, Blue Mountains contends the Service violated NEPA by failing to

---

*Mountains Biodiversity Project v. Jeffries*, 99 F.4th 438, 446 (9th Cir. 2024). Because the parties do not dispute that the pre-2020 regulations govern this case, we cite to and apply the pre-2020 regulations. *See City of Los Angeles v. Fed. Aviation Admin.*, 63 F.4th 835, 841 n.2 (9th Cir. 2023).

consider the cumulative impacts on aquatic habitat. Here too, the Service's chosen geographic scope was supported by "a reasoned decision and support for its chosen" geographic scope. *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 943 (9th Cir. 2014). Service experts considered multiple factors, such as the Forest's topography and drainage patterns, to determine the geographic scope for analyzing the cumulative impact on aquatic species. The Service concluded that "[m]easurable effects from proposed activities are unlikely to extend downstream of" the chosen analysis area. Similarly, the Service's decision not to consider every other project with restoration efforts in the Forest was proper, since the Service concluded any impacts on aquatic habitat from the Camp Lick Project would not extend to these other locations. The Service did not err in reaching these "technical analyses and judgments," to which we again defer. *Allen*, 615 F.3d at 1130.

Third, Blue Mountains argues the Service violated NEPA's requirement that agencies prepare an Environmental Impact Statement ("EIS") for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C). The Service considered each of CEQ's ten "intensity" factors for assessing significance as part of its Finding of No Significant Impact ("FONSI"). *See* 40 C.F.R. § 1508.27(b).

As to the first of the four factors that Blue Mountains challenges on appeal, the project is not "highly controversial." 40 C.F.R. § 1508.27(b)(4). Blue

Mountains does not show a "scientific controvers[y]" over the use of site-specific amendments in the Forest, *Wild Wilderness v. Allen*, 871 F.3d 719, 728 (9th Cir. 2017), or the length of time that trees will take to regrow, all of which the Service considered in its Environmental Assessment ("EA") and FONSI. Instead, Blue Mountains simply shows "the existence of opposition to a use" in the Forest. *WildEarth Guardians v. Provencio*, 923 F.3d 655, 673 (9th Cir. 2019) (quoting *Native Ecosystems Council v. U.S. Forest Serv.*, 428 F.3d 1233, 1240 (9th Cir. 2005)) (emphasis omitted).

For the remaining three factors Blue Mountains raises—that there are "cumulatively significant impacts," adverse effects to "an endangered or threatened species or its habitat," and violations of other environmental laws, 40 C.F.R. § 1508.27(b)(7), (9), (10)—Blue Mountains simply rehashes its separate NEPA and NFMA claims. Those claims independently fail, and thus Blue Mountains cannot show the Service violated NEPA.

Blue Mountains finally argues that the Service violated NEPA by preparing a Supplemental Information Report ("SIR") rather than a supplemental EA or EIS. Supplementation of an EA or EIS is only required when there are "significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts." 40 C.F.R. § 1502.9(c)(1)(ii). An SIR is appropriate, as here, for considering information made available to the Service after issuing its

EA. *See Idaho Sporting Cong. Inc. v. Alexander*, 222 F.3d 562, 565–66 (9th Cir. 2000). And the Service's analysis in its SIR of the new projects in the Forest that were approved subsequent to the EA was proper because the Service "determine[d] that the impact will not be significantly different from those it already considered." *Earth Island Inst. v. U.S. Forest Serv.*, 87 F.4th 1054, 1069 (9th Cir. 2023). Just as with the prior projects that the Service considered in its cumulative impacts analysis, the new projects were outside of the relevant analysis area, and thus their potential effects were within the scope and range of effects already considered in the EA.

3. Finally, the district court did not abuse its discretion by awarding costs to the Service. Awarding costs to prevailing parties is a default presumption and district courts have broad discretion in making this determination. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 944–45 (9th Cir. 2003). The Service filed two declarations and a contractor's invoice with enough detail for the district court to assess the allowability and reasonableness of the claimed costs. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 928 (9th Cir. 2015).

The district court's judgment is **AFFIRMED.**