Elvira **RODRIGUEZ**, Pedro Rodriguez, Juan Peralta, Raul Mujica, Saul Mayo, and all similarly situated, Plaintiffs,

v.

Nolan **CARLSON** and Jane Doe Carlson, a marital community, and Cherrystone, Inc., Defendants.

No. CY–95–3164–AAM.

United States District Court, E.D. Washington.

March 20, 1996.

---

Erik Kerzee and Rebecca A. Smith, Evergreen Legal Services, Sunnyside, Washington, for plaintiffs.

Scott Volyn, Foreman, Arch, Dodge & Volyn, Wenatchee, Washington, for defendants.

### ORDER GRANTING MOTION FOR CLASS CERTIFICATION

McDONALD, District Judge.

On March 11, 1996, a hearing was conducted on plaintiffs' Motion for Class Certification (Ct.Rec. 10). Plaintiffs were represented by Rebecca Smith of Columbia Legal

Services; Ryan Edgley of Halverson & Applegate, P.S. appeared on behalf of defendants.

The five individual plaintiffs named in the complaint allege that they are migrant agricultural workers who were employed by defendants Nolan Carlson ("Carlson") and Cherrystone, Inc. ("Cherrystone") during the cherry harvest of 1993 and/or 1994 in or around Wenatchee, Washington. They bring this action based on the defendants' alleged violations of their rights under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801 et. seq. (AWPA). Specifically, plaintiffs maintain that defendants violated AWPA by: 1) providing the plaintiffs with housing which failed to comply with applicable health and safety standards; 2) failing to post a notice of the terms and conditions of occupancy of housing facilities provided to the plaintiffs; 3) failing to obtain or post a copy of a certification of occupancy from a State or local health authority or other appropriate agency; 4) failing to disclose in writing to the plaintiffs the terms and conditions of their employment; and 5) failing to maintain in a conspicuous place a poster setting forth the rights and protections afforded to agricultural workers under the AWPA. They seek, inter alia, permanent injunctive relief and damages.

Plaintiffs filed a class action complaint, seeking to bring class claims against defendants on behalf of all farmworkers and their family members who occupied defendants' real property during the cherry harvests of 1993 and 1994. To that end, plaintiffs have filed the current motion for certification of a class. For the reasons set forth herein, the court is granting the plaintiffs' motion subject to certain conditions.

## DISCUSSION:

The plaintiffs' request for class certification focuses primarily on the living conditions to which they were allegedly subjected in 1993 and 1994. They seek class-wide injunctive relief preventing the defendants from exposing future occupants of defendants' labor camp to such living conditions. They additionally seek certification of a class for the purpose of recovering damages on behalf of all occupants of the defendants' camp during the specified time periods. They assert that class certification is appropriate under both Fed.R.Civ.P. 23(b)(2) and 23(b)(3).

Defendants oppose the plaintiffs' motion for class certification. They maintain that the plaintiffs do not satisfy all of the criteria set forth in Rule 23; therefore, certification would be inappropriate.

## A. Class Certification Standard

Class actions are " 'an exception to the usual rule that litigation is conducted by and on behalf of the named parties only.' " General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 155, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982), quoting, Califano v. Yamasaki, 442 U.S. 682, 700–01, 99 S.Ct. 2545, 2557, 61 L.Ed.2d 176 (1979). The purpose of class actions is to conserve the resources of the courts and the parties by allowing the most economical resolution of issues potentially affecting the members of the class. Jenkins v. Raymark Indus., 782 F.2d 468, 471 (5th Cir.1986), citing, General Telephone, 457 U.S. at 155, 102 S.Ct. at 2369. A class action "may only be certified if the trial court is satisfied after a rigorous analysis that the prerequisites of Rule 23(a) have been satisfied." General Telephone, 457 U.S. at 161, 102 S.Ct. at 2372.

Under Fed.R.Civ.P. 23, the court must apply a two-part analysis to determine if certification is appropriate. First, the court must determine whether the four criteria listed in Fed.R.Civ.P. 23(a) are satisfied. Second, the court must determine whether the requirements of any subsection of Rule 23(b) have been fulfilled. The court may certify a class only if both prongs of this analysis are satisfied.

## B. Definition of the Class

Before applying the two-part analysis, the court must determine whether the scope of the class which plaintiffs seek to certify is appropriate. See Haywood v. Barnes, 109 F.R.D. 568, 576 (E.D.N.C.1986) ("Prior to the consideration of the criteria set forth under Rule 23(a), the court must initially find that a precisely defined class exists...."), citing, Roman v. ESB, Inc., 550

F.2d 1343, 1348 (4th Cir.1976). Plaintiffs' proposed class encompasses

> all migrant agricultural workers, and the families of those workers, who were recruited or employed by the defendants to harvest cherries in 1993 or 1994 and/or who were provided housing by the defendants in those years [as well as] all those who may be promised or provided housing in connection with employment in the future.

They maintain that this class satisfies the criteria established in Rule 23(a) and the requirements of both Rule 23(b)(2) and 23(b)(3).

The court finds the scope of the plaintiffs' proposed class overbroad. During the hearing, plaintiffs' counsel supported her position that the families of the workers should be included within the defined class by citing two cases which have found that non-working children of migrant farm workers have a private right of action under AWPA. *See Hernandez v. Ruiz*, 812 F.Supp. 734, 736 (S.D.Tex.1993); *Sanchez v. Overmyer*, 891 F.Supp. 1253 (N.D.Ohio 1995). While these cases may indeed indicate that non-working family members have standing under AWPA, the court finds that the inclusion of "families" within the scope of the defined class would amplify factual discrepancies between the class members, thereby precluding the necessary finding of commonality.

The appropriate putative class should be precisely defined as

> All migrant agricultural workers who were recruited or employed by the defendants to harvest cherries in 1993 and/or 1994 and who were provided housing by the defendants and all those who may be promised or provided housing in connection with employment in the future.

This refinement properly narrows the parameters of the putative class and facilitates the court's application of the Rule 23 analysis. *Cf. Haywood*, 109 F.R.D. at 576 ("In the case at bar, plaintiffs have precisely defined the class they wish to represent as all migrant farmworkers who were used or employed by the [defendant] at a specific location, during a specific time frame, and who were injured in one of four delineated ways"); *see also*

*Roman v. Korson*, 152 F.R.D. 101, 111 (W.D.Mich.1993) (where a 23(b)(2) class sought to be certified in an AWPA action, court noted that the class appropriately included future workers, since otherwise, those future workers would have to wait for a violation to occur before seeking a post-hoc remedy).

## C. Application of the Standard to the Proposed Class

### 1. Rule 23(a)

■ Rule 23(a) provides:

> (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law and fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The four requirements are often called numerosity, commonality, typicality, and adequacy. Plaintiffs bear the burden of establishing these four prerequisites. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992), *citing, Mantolete v. Bolger*, 767 F.2d 1416, 1424 (9th Cir.1985).

#### a. Numerosity

■ In establishing this element, plaintiffs need not show that the number of class members is so large that it would be impossible to join all of them; impracticability does not mean impossibility. *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir.1964). "In analyzing this element mere numbers have proven an inconsistent guideline to determine the appropriateness of certification." *Leyva v. Buley*, 125 F.R.D. 512, 515 (E.D.Wash.1989) (citation omitted). Rather, in addition to the mere number of plaintiffs, such factors as "geographical dispersion, degree of sophistication, and class members' reluctance to sue individually" are considered in determining the impracticability of joinder. *Id.; see also Jordan v. Los*

*Angeles,* 669 F.2d 1311, 1319 (9th Cir.1982), *vacated on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982).

Plaintiffs note that the class is composed primarily of monolingual Spanish-speaking, impoverished farmworkers. They estimate the amount of individuals who lived on defendants' property during the cherry harvests of 1993 and 1994 as well over 100.

Defendants concede that it would be impracticable to join all of the members of the putative class. Moreover, in *Leyva,* the court found the numerosity requirement fulfilled under similar circumstances. *See Leyva,* 125 F.R.D. at 515. The court is convinced the plaintiffs have met their burden of demonstrating the impracticability of joinder.

### b. Commonality

▬▬ Rule 23(a)(2) requires the plaintiffs to demonstrate questions of law and fact common to the class. *Id.* "This requirement has been liberally construed and 'those courts that have focused on Rule 23(a)(2) have given it a permissive application so that common questions have been found to exist in a wide range of contexts.'" *Haywood v. Barnes,* 109 F.R.D. 568, 577 (E.D.N.C.1986). The rule does not require all questions of law and fact to be common. *Blackie v. Barrack,* 524 F.2d 891, 902 (9th Cir.1975), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976).

Plaintiffs assert that the common questions of fact include whether or not the defendants provided the proper AWPA disclosures, arranged to have their housing inspected by state or local health officials in 1993 or 1994, and whether the defendants maintained the housing in accordance with applicable health and safety standards. They further contend that the common question of law is whether the defendants' actions violated the workers' rights under the AWPA.

Defendants challenge the plaintiffs' ability to demonstrate commonality, claiming that there are no common disputed questions of fact or law. Although they fail to explain this position in their memorandum, they apparently suggest that if the defendants did

indeed violate the AWPA, the circumstances of these violations would vary widely from worker to worker.

A similar objection was rejected in *Leyva v. Buley, supra:*

> [A]lthough not all potential members of the class appear to have been housed by the defendant, and not all worked for precisely the same period of time, they all worked during the limited harvesting season in a single year, and the conditions of employment were allegedly the same, as were the housing conditions for those who were housed by the defendant. As the Ninth Circuit stated in *Blackie [v. Barrack, supra],* courts take a common sense approach. When the class is united by a common interest in determining whether the defendant's course of conduct is, in its broad outlines actionable, differences in the class members' positions should not defeat class certification.

*Leyva,* 125 F.R.D. at 516; *see also Haywood,* 109 F.R.D. at 577 ("All of the housing in which the workers lived was owned by the [defendant] and similarly maintained during the period in question, suggesting common questions as to its adequacy").

Given the fairly liberal standard applying to this requirement, the court finds that the plaintiffs have made a sufficient showing of commonality. While there might be some variances regarding the housing conditions of the class members, the kinds of conditions cited by plaintiffs (i.e. insufficient shower facilities; no place to eat or prepare food) would appear to be necessarily endured by many if not all of the camp's occupants. Moreover, the defendants' failure to post the required AWPA disclosures would obviously constitute an omission commonly experienced by all of the workers.

### c. Typicality

▬▬ Plaintiffs must also demonstrate that their claims or defenses are typical of the claims or defenses of the class. The claim of a party is typical if it arises from the same event or course of conduct which gives rise to the claims of other class members and is based on the same legal theory. *De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d

225, 232–33 (7th Cir.1983). The claims of the purported class representative need not be identical to the claims of other class members, but the class representative must be part of the class and possess the same interest and suffer the same injury as the class members. *CRLA v. Legal Services Corp.*, 917 F.2d 1171, 1175 (9th Cir.1990), *modified*, 937 F.2d 465 (9th Cir.1991).

Plaintiffs assert that the typicality requirement is clearly met, since their claims are identical to those of the putative class members. They indicate that all class members allege that they were provided with unlicensed, substandard housing, and that none of the class members received the required disclosures. The district court in *Haywood v. Barnes* addressed the typicality requirement under similar circumstances:

> In the case at bar, the typicality requirement is fulfilled without difficulty. All of the unnamed plaintiffs lived in the provided housing and worked with one of the farm labor contractors during the period in question. As in *De La Fuente [v. Stokely–Van Camp]*, *supra*, all of the major AWPA claims of the named plaintiffs are directed at the housing, payroll, and disclosure practices of the defendants. . . . These practices affected in the same way, albeit perhaps in varying degrees, any migrant farmworker who came to work for the defendants. The practices complained of appear to have remained essentially unchanged throughout the spring and summer of 1983. All members of the putative class were allegedly subject to the same statutory violations pled.

*Haywood*, 109 F.R.D. at 578.

The named plaintiffs assert the same claims as the other putative class members. Accordingly, they have satisfied this requirement.

#### d. Adequacy

 To establish the fourth requirement under Rule 23(a), plaintiffs must demonstrate that they will fairly and adequately protect the interests of the class. "Under this element, both the individual representative plaintiffs, and their counsel, must be examined to determine whether their 'zeal and competence' are sufficient to adequately prosecute the interests of the class." *Leyva*, 125 F.R.D. at 516, *citing, Fendler v. Westgate–California Corp.*, 527 F.2d 1168 (9th Cir.1975). Basically, this requires the court to make two determinations: (1) whether counsel representing the class is qualified and competent, *Fendler*, 527 at 1170; and (2) whether class representatives should be disqualified for having interests antagonistic to the class. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978).

As to the first determination, plaintiffs' attorney attaches an affidavit, wherein she recites her qualifications. The affidavit establishes that counsel has specialized in labor and civil rights cases involving farmworkers for the last thirteen years. She additionally speaks fluent Spanish, which enables her to communicate effectively with her clients. In light of these credentials, the court is confident that plaintiffs' counsel is both qualified and competent to represent the interests of the putative class.

Regarding the second issue, plaintiffs assert that their interests are coextensive with the class members rather than antagonistic, since they bring identical claims. As defendants do not challenge the plaintiffs' assertion, the court concludes that the named plaintiffs will adequately protect the interests of the class.

#### 2. Rule 23(b)

As indicated, if the court determines that the requirements of Rule 23(a) are met, the court must determine whether any of the subsections of 23(b) apply. Plaintiffs maintain that their proposed class fulfills the requirements of both subsections 23(b)(2) and 23(b)(3).

#### a. Rule 23(b)(2)—Certification of an Injunction Class

 Fed.R.Civ.P. 23(b) provides that [a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making

appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole....

This ground is not intended to apply where the relief sought is predominantly money damages. *Nelsen v. King County*, 895 F.2d 1248, 1254 (9th Cir.1990). However, courts may allow class actions on this ground where the main relief sought is an injunction, with a damages claim merely ancillary thereto. *Probe v. State Teachers' Retirement System*, 780 F.2d 776, 780 (9th Cir.1986), *cert. denied*, 476 U.S. 1170, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986).

Defendants argue that certification under this injunctive subsection would be inappropriate, since the plaintiffs fail to present any evidence of a probability of continuing violations in the future. They point out that plaintiffs fail even to allege defendants' continuing illegal course of action during the 1995 cherry harvest, despite the fact that two plaintiffs worked during the 1995 harvest.

In *Roman v. Korson*, 152 F.R.D. 101 (W.D.Mich.1993), the district court addressed a motion to certify a 23(b)(2) class in an AWPA action. The court noted that plaintiff was "correct in stating that the injunction sought is possible only if there is some showing of ongoing violations *or* a reasonable likelihood that violations will occur in the future." *Id.* at 109 (emphasis added), *citing*, *Kohn v. Mucia*, 776 F.Supp. 348, 355 (N.D.Ill.1991).

Upon close examination of the record, the court finds that plaintiffs have met the minimal requirement of demonstrating the "reasonable likelihood" of continuing violations. In their complaint, they allege that they "have suffered and *will continue to suffer* irreparable injury as a result of the defendants (sic) acts." (Ct.Rec. 1 at 8, ¶ 5.12) (emphasis added). Additionally, in their attached affidavits, certain plaintiffs indicate that the defendants' housing violations occurred both in 1993 and 1994; they note that the purpose of their action is to ensure that their employer observes the law in the future. *See* Declaration of Pedro Rodriguez at 2; Declaration of Raul Mujica at 2.

[19, 20] The allegations of plaintiffs are sufficient; defendants present no authority to support the proposition that plaintiffs should be required to substantiate their allegations by presenting evidence of a probability of continuing violations in the future. To the contrary, in *Walsh v. Ford Motor Co.*, 130 F.R.D. 260 (D.D.C.1990), cited by defendants, the court noted that a "district court should restrict its inquiry on a certification motion to a determination of 'whether a class action is appropriate, *not* the probability of plaintiffs' success on the merits of the substantive claim.'" *Id.* at 264–65 (citations omitted) (emphasis added). By demanding that plaintiffs present evidence at this juncture to substantiate their allegations in support of certification, defendants would have this court examine the merits of the plaintiffs' underlying claims.[1] However, this is a motion to certify class, not a motion for summary judgment; accordingly, the scope of this court's inquiry is restricted:

> The Court emphasizes that in ruling on plaintiffs' motion for class certification it has not and cannot properly consider the merits of the case. Plaintiffs need not even establish the existence of a cause of action in order to have a class certified, but rather the Court must merely be satisfied that the plaintiffs claim is more than frivolous or "insubstantial."

*Rodriguez by Rodriguez v. Berrybrook Farms, Inc.*, 672 F.Supp. 1009, 1017–18 (W.D.Mich.1987). On a motion for class certification, the only question for the court is whether the requirements of Fed.R.Civ.P. 23 are met. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). The court does not inquire into the merits of a suit in order to determine if certification is appropriate. *Id.* The court must therefore take a plaintiff's allegations as true for purposes of the certification motion. *Id.* The possibility that a plaintiff will be unable to prove his or her allegations does not provide a basis on which to deny certification. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir.1975).

---

1. At the March 11 hearing, defense counsel acknowledged that the court cannot conduct a substantive exploration of the merits of the plaintiffs' case in ruling on the motion to certify.

While defendants ostensibly urge the court to examine solely the plaintiffs' allegations, they clearly suggest that class certification would be improper, because the plaintiffs' AWPA claims regarding housing violations lack merit. Indeed, defendant Nolan Carlson attaches his affidavit, wherein he explains at length that Cherrystone has complied with safety and health regulations. *See* Affidavit of Nolan Carlson at 2, attached as Exhibit A to Ct.Rec. 15. He describes in detail the types of facilities found in the temporary housing sites provided to the farmworkers.

Defendants also attach the affidavit of Natalie Gonzalez, a Health Services Administrator for the Washington State Department of Health. (Ct.Rec. 15, Exhibit B). Gonzalez indicates that in 1994 she visited Cherrystone's labor camp and found that it provided "adequate potable water, toilet facilities, hand washing facilities and shower facilities as compared to the number of persons occupying the labor camp." She further states that during the 1995 cherry harvest, Cherrystone received a provisional license from the Department of Health, which required it to maintain compliance with certain basic safety and health requirements. In their reply, however, plaintiffs attach another affidavit from Gonzalez, wherein she acknowledges that her determination in 1994 was based on an estimate of the number of workers, not an exact count. (Ct.Rec. 18 at 2). She also notes that provisional licenses, such as the one given to Cherrystone in 1995, may be issued when housing fails to meet appropriate standards under the Washington Administrative Code.

In attaching the affidavits of Carlson and Gonzalez, defendants implicitly argue that the plaintiffs have no case. As noted, defendants are welcome to make such arguments in a motion for summary judgment; however, this court cannot examine the merits of plaintiffs' allegations regarding the actual conditions of the labor camp in the context of this particular motion.

Also, in the court's view, the mere fact that housing violations have been discontinued would not necessarily obviate the need for permanent injunctive relief. Violations ceased due to the threat of a lawsuit could easily resume once that specter disappears. Accordingly, injunctive relief is not rendered moot simply because defendants claim not to be presently violating AWPA. *Cf. Bueno v. Mattner,* 633 F.Supp. 1446, 1454 (W.D.Mich. 1986), *aff'd,* 829 F.2d 1380 (6th Cir.1987), *cert. denied,* 486 U.S. 1022, 108 S.Ct. 1994, 100 L.Ed.2d 226 (1988) (Even if farm operators were not presently violating the Fair Labor Standards Act, migrant workers who established operators' violations of the Act were entitled to injunction to ensure operators' future compliance with the Act's requirements); *Donovan v. Kaszycki & Sons Contractors, Inc.,* 599 F.Supp. 860, 872 (S.D.N.Y.1984) (Plaintiffs entitled to injunction enjoining defendants from future violations of the FLSA even if present violations had ceased) (citations omitted).

Defendants additionally argue that class certification for purposes of injunctive relief should be denied, because it would involve entanglement with an administrative agency's regulation of safety and health requirements. They maintain that the award of class-wide final injunctive relief in this case could interfere with future administration of the Washington State Department of Health's provisional licensing program.

In support of this argument, defendants cite *Walsh v. Ford Motor Co.,* 130 F.R.D. 260 (D.D.C.1990). *Walsh* involved a nationwide warranty action by plaintiff automobile owners against the defendant for alleged defects in its motor vehicles. Plaintiffs, on behalf of a potential class of up to nine million parties, moved for certification of four classes of Ford owners, pursuant to Fed.R.Civ.P. 23 and the Magnuson–Moss Warranty Act. They specifically sought certification of a Rule 23(b)(2) class of all current owners of the allegedly defective models for the purposes of obtaining the equitable remedies of recall and retrofit.

The district court refused to certify this Rule 23(b)(2) class, ruling that monetary damages, rather than equitable relief, constituted the more appropriate form of relief. *Id.* at 266. The court noted that the equitable relief sought in this specific case demanded more resources and supervision that it

could hope to provide, thereby making an injunction uncertain to provide full relief. The court additionally reasoned that by opting not to provide the equitable relief sought, "[t]he Court also would avoid entanglement with a regulatory scheme designed and intended to empower principally the Department of Transportation, rather than the courts, to order and oversee motor vehicle recalls." *Id.* at 267. However, the court expressly qualified this statement, noting that this was not a "proper, discrete case" for awarding equitable relief under Rule 23 and the Magnuson–Moss Act. *Id.* at 267 n. 6.

To suggest that the rationale of *Walsh* applies to the instant case is somewhat fanciful. The factual distinctions between these two cases are unmistakably clear—this court is not faced with the administration of a nationwide class involving millions of class members. Also, the types of violations alleged by the plaintiffs in this case would not be fully remedied solely by the award of monetary damages. In *Walsh*, as compared to this case, there was no potential for future violations; rather, the plaintiffs in *Walsh* sought to compel the defendant's correction of a mechanical defect in previously purchased cars.[2]

Moreover, the statute forming the basis for this lawsuit, AWPA, expressly provides for the type of injunctive relief sought by the putative class. Rather than relegating the administration of federal and state safety and health standards exclusively to the agencies, 29 U.S.C. § 1854(c)(1) establishes a private right of action for violations of such standards and provides for the recovery of appropriate equitable relief. Furthermore, 29 U.S.C. § 1854(c)(1)(B) clearly extends this remedy to plaintiffs *in class actions.* Finally, 29 U.S.C. § 1823, which is the AWPA section addressing the safety and health of housing provided to workers, indicates that the receipt and posting of a certificate of occupancy from a State or local health authority does not relieve individuals of the responsibility of ensuring that their facility complies with applicable federal and state safety and health standards.

In short, *Walsh, supra,* is totally inapposite, and defendants' reliance thereupon is misplaced. The plain language of AWPA reveals that Congress has consciously chosen not to commit the enforcement of federal and state health and safety standards solely to administrative agencies. If plaintiffs can prove their allegations, class-wide injunctive relief enjoining future violations would be appropriate.

Defendants additionally contend that 23(b)(2) does not apply, as plaintiffs' lawsuit is primarily for money damages rather than injunctive relief. This argument was rejected by the district court in *Leyva, supra:*

> Although the monetary damages element [of plaintiffs' action] is not *de minimis,* the injunctive relief sought appears to be equally important given migrant workers return annually to a given farm or region.

*Leyva v. Buley,* 125 F.R.D. 512, 518 (E.D.Wash.1989); *see also Rodriguez by Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1017 (W.D.Mich.1987). This court similarly finds the injunctive relief sought by plaintiffs in this case to be of primary significance.

Defendants, however, further argue that the plaintiffs' failure to submit any allegations of defendants' continuing violations of the AWPA in 1995 suggests that the primary focus of their case is monetary damages. The court disagrees. Plaintiffs emphasize in their affidavits that their intention in bringing this lawsuit is to prevent defendants from repeating the AWPA violations in the future. Moreover, as noted above, the mere possibility that defendants may have discontinued their allegedly illegal employment practices would not necessarily preclude plaintiffs from obtaining injunctive relief. The fact that a defendant's alleged illegal conduct may have temporarily ceased does not diminish the im-

---

**2.** The court noted that it would be better to award monetary damages and to let the motorists decide whether they would prefer to keep the money as compensation for the loss of value in their vehicles for the alleged breach, or to use the money to obtain the retrofit themselves. *Id.* at 266–67. Migrant workers who may return to an employer's facility each year have no similar option.

portance of injunctive relief enjoining the resumption of such activity.

In their memorandum, plaintiffs contend that all class members were provided with substandard, unlicensed housing in violation of AWPA and that all of them were subject to the same course of treatment regarding their claims under the AWPA. (Ct.Rec. 13 at 6). These allegations, if true, would warrant injunctive relief. Thus, for purposes of this motion to certify, the court finds that the plaintiffs have established that defendants acted or refused to act on grounds generally applicable to the class.

### b. Rule 23(b)(3)—The Damages Class

Certification of a class is also permitted where the requirements of Rule 23(a) are met and

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3).

### i. Predominance

■■■■■ The first prerequisite for bringing an action under Rule 23(b)(3) is that common questions of law or fact predominate over the individual issues presented by the dispute. Determining whether common issues predominate does not involve the application of a precise test. Instead, it requires a pragmatic assessment of the entire action and the issues involved. *See Jenkins v. Raymark Indus., Inc.,* 109 F.R.D. 269, 278 (E.D.Tex.1985), *aff'd,* 782 F.2d 468 (5th Cir.

1986); *In re Agent Orange Product Liability Litigation,* 100 F.R.D. 718, 722 (E.D.N.Y. 1983), *cert. denied,* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988). As stated by the district court in *Agent Orange,*

[w]hen common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is a clear justification for handling the dispute on a representative rather than on an individual basis.

*Agent Orange,* 100 F.R.D. at 722, *citing,* 7A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* Civil 2d, § 1778; *see also Haywood v. Barnes,* 109 F.R.D. 568, 581 (E.D.N.C.1986).

The five types of AWPA violations specified in the plaintiffs' complaint can be grouped into three issues: (1) whether defendants failed to provide proper postings and written disclosures; (2) whether defendants failed to ask for or receive proper certification for the housing provided to workers; (3) whether defendants failed to provide housing which complied with proper safety and health standards. The defendants' liability with respect to these first two is subject to resolution in a single adjudication—either the defendants provided the adequate notices and disclosures and obtained the appropriate housing certification, or they did not.

■■■■ Defendants strongly contest the commonality of the issues pertaining to the alleged housing violations. They argue that the facts relevant to compliance with applicable health or safety requirements vary depending on the individual alleging those violations. To support this argument, they point out the dichotomy between those housing requirements that directly affect the health and safety of the migrant workers and those which are merely "technical, *de minimis*" violations. *See* Opinion Letter of the Wage and Hour Administrator No. 1726, attached as Exhibit C to Ct.Rec. 15. The opinion letter indicates that correction will not be required for such "technical" violations. The defendants argue that the determination of whether a violation is "technical" or "substantive" involves a highly fact specif-

ic analysis which necessarily precludes the court from finding that questions common to the class members regarding these violations predominate.[3] However, the existence of individual questions concerning class members does not necessarily defeat the commonality requirement. The rule requires only that common questions *predominate*, not that they be unanimous. *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 693 (N.D.Ga. 1983).

In *Haywood v. Barnes*, 109 F.R.D. 568 (E.D.N.C.1986), the district court considered arguments highly similar to those presented by defendants in the instant case. The court rejected the defendants' claim that proof of the AWPA housing violations would require intricate, individualized analysis:

> The record is clear that the Barnes provided and maintained housing for all the migrant farmworkers who worked in the Barnes' fields during 1983. Unlike the one case cited by defendants to bolster their argument, ... this case does not involve an inquiry into 82 separate county jail facilities; rather it involves an examination of conditions of property and facilities located in one central geographical area, owned and operated by one entity—the defendants.

*Id.* at 582. The court went on to note that the record established that the defendants' camps remained in essentially the same condition throughout the 1983 season and that

various plaintiffs had identified conditions common to all occupants of the housing.

This case is similar: the facilities in question are located in one central area and owned by the defendants. *See* Affidavit of Nolan Carlson at 1–2. Furthermore, a review of the plaintiffs' affidavits indicates that at least the majority of the workers endured the same conditions. *See e.g.* Declaration of Juan Peralta at 1; Declaration of Raul Mujica at 2. They also identify conditions common to the occupants which would potentially constitute violations of substantive health regulations. *See e.g.* Declarations of Pedro Rodriguez at 1–2; Elvira Rodriguez at 1; Juan Peralta at 1; Raul Mujica at 2; Saul Mayo at 2 (workers not provided any place to prepare or cook food); Declarations of Juan Peralta at 1; Raul Mujica at 2; Saul Mayo at 2 (workers not provided sufficient shower facilities). Whether or not the defendants' camp had a place for workers to eat and prepare food or sufficient shower facilities hardly appears to be a question which must be examined on an individual-by-individual basis. If true, these conditions were commonly suffered by all of the camp's occupants.

Defendants also assert that, assuming each individual can establish defendants' liability on these housing violations, the extent of awardable damages would differ as to each worker. They argue, for example, that the appropriate amount of statutory damages to

---

**3.** At the March 11 hearing, defense counsel asserted that the Ninth Circuit's recent decision in *Conlan v. Dep't. of Labor*, 76 F.3d 271 (9th Cir. 1996) establishes a scienter requirement for imposing statutory damages under AWPA pursuant to 29 U.S.C. § 1854(c)(1). Counsel claims that this scienter requirement raises individualized questions of fact on the issue of defendants' liability for housing violations.

Although *Conlan* did not directly address 29 U.S.C. § 1854(c)(1), the court noted that this section "requires a showing that the defendant 'intentionally' violated a provision of the MSPA before damages can be awarded." *Id.* The term, "intentional," as it is used in AWPA means conscious or deliberate and does not require a specific intent to violate the law. *Bueno v. Mattner*, 829 F.2d 1380, 1385 (6th Cir.1987); *Alvarez v. Longboy*, 697 F.2d 1333, 1338 (9th Cir.1983) (interpreting "intentional" in the context of the Farm Labor Contractor Registration Act (FLCRA), which is the predecessor to AWPA).

This "intentional" requirement has been construed liberally, to impose liability on individuals for the natural consequences of their acts. *Rivera v. Adams Packing Ass'n*, 707 F.2d 1278, 1283 (11th Cir.1983).

Defense counsel implied that, following *Conlan*, defendants could be held liable for housing violations only upon a showing that they knew where each individual worker stayed. The court disagrees: plaintiffs could prevail on their claims of alleged housing violations by demonstrating that it was standard practice for the defendants to provide substandard housing to their migrant workers. Where operating in violation of the AWPA is a defendant's normal business practice, the violation is intentional within the meaning of 29 U.S.C. § 1854. *Stewart v. Everett*, 804 F.Supp. 1494, 1498 (M.D.Fla.1992); *Osias v. Marc*, 700 F.Supp. 842, 844 (D.Md.1988). Such a showing would not present individualized issues, as defendants suggest.

be awarded to each class member for any violation of the AWPA disclosure requirements would vary depending upon the effect of that failure upon each individual employee. Defendants assert that if the required written notices were not provided but the workers orally received the pertinent information, such circumstances would be less egregious than those where the worker received neither written nor oral notice. Defendants argue that these variations with respect to damages preclude certification under Rule 23(b)(3).

While defendants may accurately identify some potential difficulties in calculating the appropriate damages to be awarded to class members, the court finds that these individual issues are largely overshadowed by the predominant common questions of liability in this case. Indeed, various courts have considered and rejected defendants' argument in the context of AWPA or FLCRA class actions. *See De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 233 (7th Cir.1983); *Haywood v. Barnes,* 109 F.R.D. 568, 583 ("The fact that the potential amount of damages might vary with the number of violations does not preclude class certification where common questions of law and fact as to liability clearly predominate. This argument has been rejected time and again by the courts in a multitude of factual settings") (citations omitted); *see also Blackie v. Barrack,* 524 F.2d 891, 905 (9th Cir.1975) ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment").

Moreover, defendants may actually overstate the individual issues pertaining to the award of damages in this AWPA action. Under 29 U.S.C. § 1854(c)(1),[4] the court may award actual or statutory damages. Should plaintiffs prevail at trial, it is likely that the court will award statutory damages to each class member of up to $500. Courts have

recognized that such statutory damages "are not dependent on proof of actual injury." *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1306 (9th Cir.1990). "Therefore, the district court [is] not obligated to required individual proof of injury from each class member." *Id., citing, Montelongo v. Meese,* 803 F.2d 1341, 1351 (5th Cir.1986), *cert. denied,* 481 U.S. 1048, 107 S.Ct. 2179, 95 L.Ed.2d 835 (1987) ("[T]he liquidated damages awards obviated any need to resolve individual questions of reliance and damages"); *Haywood,* 109 F.R.D. at 584 ("In this type of class action damages claim, the statutory damages provision essentially relieves the court of the obligation of determining the damages suffered by each plaintiff once an intentional violation is found. Thus, individualized claims for damages 'offer no barrier to class certification' ") (citations omitted).

The court does not mean to suggest that there will be no individual issues raised by this class action. However, the court is convinced that these are insubstantial when measured against the predominant legal and factual issues involved in this case. The court finds that the defendants' alleged omissions regarding AWPA disclosures, and the conditions of the camp are, in general, predominant common factual issues. Also, the alleged conditions of the camp will be measured against the common legal standards established by federal and state health and safety regulations.

### ii. Superiority

As listed above, there are four criteria to be considered in determining whether class certification under Rule 23(b)(3) is "superior to other available methods" for the resolution of the dispute. With respect to the first, it is hard to imagine that the other unnamed members of the class have a strong interest in initiating and independently con-

---

4. 29 U.S.C. § 1854(c)(1) provides:

If the court finds that the respondent has intentionally violated any provision of this chapter or any regulation under this chapter, it may award damages up to and including an amount equal to the amount of actual damages, or statutory damages of up to $500 per plaintiff per violation, or other equitable relief, except that (A) multiple infractions of a single provi-

sion of this chapter or of regulations under this chapter shall constitute only one violation for purposes of determining the amount of statutory damages due a plaintiff; and (B) if such complaint is certified as a class action, the court shall award no more than the lesser of up to $500 per plaintiff per violation, or up to $500,000 or other equitable relief.

trolling their own individual actions. As recognized in *Leyva v. Buley*, 125 F.R.D. 512, 518 (E.D.Wash.1989):

> With their lack of English, their presumably limited understanding of the legal system, the fact that few live permanently within the Eastern District of Washington, and their generally indigent status, it is highly unlikely that the individual plaintiffs would pursue this litigation if class certification were not allowed.

*See also Haywood*, 109 F.R.D. at 592. This court is faced with identical circumstances in this case. Additionally, the court foresees some potential difficulties in managing this class action, but none substantial enough to warrant denial of the plaintiffs' motion.

Various courts have found AWPA actions similar to the case at bar to be well qualified for class certification. *See e.g. Leyva, supra; Haywood, supra.* In their responsive memorandum, defendants do not suggest that the superiority requirement is not fulfilled. The court finds that certification will provide a superior method for resolving these AWPA claims against the defendants. Should problems arise in the future rendering certification inappropriate, this court can always decertify at that time. *Cf. Haywood*, 109 F.R.D. at 593.

### 3. Choice of Certification Mechanism

Plaintiffs do not address the requirements of Fed.R.Civ.P. 23(c)(2):

> In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude the member from the class if the member so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if the member desires, enter an appearance through counsel.

Pursuant to this subsection of Rule 23, members of the putative class would be able to opt-out following receipt of the notice. No such notice is required where certification is obtained under Rule 23(b)(2), and certification under that subsection binds all members of the class. Thus, certification is generally preferred under Rule 23(b)(2), given the wider res judicata effect. *Elliott v. Weinberger*, 564 F.2d 1219, 1229 (9th Cir.1977) *modified*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). When class certification is validly sought in the alternative under Rule 23(b)(2) and (b)(3), a mandatory (b)(2) class is preferred. *Cook v. Rockwell International Corp.*, 151 F.R.D. 378, 388 (D.Colo. 1993), *citing, Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir.1973).

Since the court finds that certification under either Rule 23(b)(2) and 23(b)(3) would be appropriate, it is inclined to certify *only* under 23(b)(2). Although plaintiffs' counsel argued at the hearing that the plaintiffs should be proffered the opportunity to opt-out of the designated class, the court finds it likely that this option would rarely, if at all, be exercised. Any interest a few individuals may have in opting out of the class is surpassed by the court's interest in obtaining the broader res judicata effect of certification under Rule 23(b)(2). Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to certify class is **GRANTED;** however, the court shall certify *only* under Fed.R.Civ.P. 23(b)(2). The class is defined as:

> **All migrant agricultural workers who were recruited or employed by the defendants to harvest cherries in 1993 and/or 1994 and who were provided housing by the defendants and all those who may be promised or provided housing in connection with employment in the future.**

**IT IS SO ORDERED.**